**People of the State of Illinois, Plaintiff-Appellee, v. Roscoe Minor, Defendant-Appellant.**

**Gen. No. 50,706.**

First District, Fourth Division.

May 13, 1966.

William A. Cain, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Joseph Garlovsky and Albert J. Armonda, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

Roscoe Minor, defendant, was indicted by the Cook County Grand Jury on the charge that he had committed the offense of sale of a narcotic drug. The defendant waived a jury and was tried before a judge of the Circuit Court, found guilty and sentenced to the Illinois State Penitentiary for a term of years not less than ten nor more than thirteen.

The defendant was arrested on January 5, 1965, and charged with the unlawful sale of narcotics to one Jeffery Turner, alias Robert Jackson, hereafter referred to as Jackson.

Jackson was a police informer. He testified that he was not at the present time a user of narcotics but that he had been an addict about a year and a half to two years before the trial; that prior to January 5, he had been arrested by Officer Williams for the sale of heroin, which charge was still pending in the Criminal Court of Cook County at the date of the trial of the defendant in the instant case.

On January 5, 1965, after 7:00 p. m., Jackson met police officers Williams and Nance, who searched him, found he was free of narcotics and then gave him $10 in currency after recording the serial numbers. The police drove Jackson to 36th Street and Indiana Avenue, in Chicago, where Jackson got out of the car and walked east on 36th Street, turned left on Indiana Avenue, and walked toward 35th Street. The police car was parked in the alley, and within five or ten minutes after Jackson left he returned to the car and gave Officer Williams two tinfoil packages of white powder which Officer Williams examined, and which a later field test proved to contain heroin. [At the trial the usual stipulation was entered into that the Chicago Police Department Crime Laboratory chemist would testify that the packages contained heroin.]

Jackson testified at the trial that when he left the police he went to Grand Prix tavern at 35th and In-

diana, where he "saw Blood, the defendant, coming out of the tavern"; that the defendant said he could supply Jackson with heroin and Jackson gave him $9; that the defendant went into another tavern, the Subway Lounge, and went to the washroom; that the defendant gave Jackson two tinfoil packages of heroin; and that Jackson then went back to the police car, told the officers about his purchase, and gave them the packages.

Officer Williams testified that after Jackson left the police car he was out of sight of the officers and that Officer Williams did not see Jackson again until he returned; that he did not at that time see the defendant in the vicinity of 35th Street and Indiana Avenue, nor did he see him until 11 o'clock that evening when he was arrested in the Grand Prix tavern. At the time of the arrest the defendant denied that he had sold narcotics, and the police did not find any marked money on his person when they searched him. The defendant requested that they go with him to the room in which he said he slept, and when they went there they found no money and no narcotics.

When Jackson had returned to the police car he had given the officers a complete description of the man from whom he claimed to have purchased the narcotics. Officer Williams was asked whether or not he based his arrest of the defendant solely on what Jackson had told him, and he replied: "Well, I based the arrest on the complete description given to me by the informer, my prior knowledge of the defendant, and my prior knowledge of the defendant's illicit activity in narcotics." He further testified that he did not know whether Jackson purchased heroin from the defendant, other than what he was told by Jackson; that after Jackson told them of the purchase and described his seller, the officers started to look for the defendant at 35th and Indiana, going from tavern to tavern and from restaurant to restaurant.

Officer Nance, who accompanied Officer Williams, gave the same testimony with reference to the search of Jackson and the prerecorded money given to him. He stated that after Jackson left the officers he was out of their view; that he returned in about 20 minutes, when he gave two tinfoil packages to Officer Williams; that this was about 7:00 p. m.; that at that time he and Officer Williams went to 35th and Indiana, but did not find the defendant there; that they arrested the defendant at about 9:40 or 9:50 p. m., on the same evening, at 3510 South Indiana Avenue. In response to a question by the court Officer Nance gave the following statement: "I didn't give the informer anything for his services nor did anyone else to my knowledge. He does have hopes of receiving some consideration for his services." On redirect examination, he stated, "It's normal after trial is over to go to State's Attorney's office and request consideration for testifying."

In this court the defendant argues that the State failed to prove him guilty of the sale of narcotic drugs, and relies on People v. Bazemore, 25 Ill2d 74, 182 NE2d 649, in which case the principal witness for the prosecution was an informer who had been assisting police in narcotics matters for about nine months prior to the defendant's arrest. The informer testified that he had seen the defendant selling narcotics on the street in the vicinity of a pool hall. He went with certain police officers to a street corner near the pool hall. The officers searched him and gave him $10 in inventoried money. The officers stayed in the police car about a block away from the pool hall. The informer walked to the vicinity of the pool hall and later returned with two tinfoil packets which contained narcotic drugs. He told the police he purchased the packets from the defendant with the money furnished by the police, and gave the police a description of the defendant. The police made a search

467

of the area but could not find the defendant. About two months later the informer told the police he had again seen the defendant in the same vicinity, and at that time the defendant was arrested. No narcotics were found on his person, nor was any of the inventoried money ever recovered. At the trial of the case the informer admitted that he had been a narcotics addict and that he had purchased narcotics for his own use from the defendant some months before. As to how complete an addict the informer was is not clear from the evidence. One of the police officers said that he knew the informer was an addict but had never arrested him. Both officers admitted that the informer was not kept under surveillance and that they did not know in fact whether or not the narcotics had been purchased from the defendant. In that case the Supreme Court laid down the rule that where the State's case rests solely upon the credibility of an admitted narcotics addict, the trial court and the reviewing court must carefully and closely scrutinize the testimony of the witness. It also pointed out that the witness was not under surveillance by the police as he went about making his purchases of drugs.

In the case before us there is no evidence that at the time of the sale of the drugs Jackson was an addict, but he had been previously.

■ Furthermore, there is evidence that he was under arrest for the sale of narcotics and that he would expect consideration in that case from the State's Attorney's office because of his aid to the police. Under such circumstances the testimony of an informer must be carefully and closely scrutinized. In the Bazemore case the court said:

> "The credibility of witnesses and the weight to be afforded their testimony are essentially matters to be determined by the court or jury, as the case may be. And while we are loathe to disturb their

468

findings in such matters, we cannot say after a searching analysis of the record that the entirely uncorroborated testimony of Lenier is so clear, satisfactory and convincing as to remove all reasonable doubt of defendant's guilt. This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one."

The court further said:

"Though unemployed during the period he worked with the police, Lenier still had his own habit to satisfy and, in looking to his motives for acting as an informer, we cannot help but take particular cognizance that he was being 'loaned' money by one of the officers. Considering the evil of narcotics traffic and the stealth with which it is conducted, we do not condemn this action of the officer aimed at apprehending the most despicable of criminals, the narcotics suppliers. But, at the same time, we must consider that the informer would doubtless go to extremes to curry police favor and 'loans,' and the possibility that, being completely without surveillance, he would act under the compulsion of producing a victim in order to perpetuate the status he had enjoyed for nine months."

The court found that such reasonable doubt was left in its mind with reference to the guilt of the accused defendant that it must reverse the judgment of the Criminal Court.

In the instant case the State argues that the rule laid down in Bazemore was changed in People v. Real-

mo, 28 Ill2d 510, 192 NE2d 918; with that conclusion we cannot agree. In the Realmo case the court said:

"Defendant's third contention that the proof does not establish beyond a reasonable doubt all of the elements of the crime is in reality an attack upon the probative value and sufficiency of the informer's testimony. People v. Bazemore, 25 Ill2d 74, cited in support thereof, does hold that under the circumstances there present, an admitted addict's wholly uncorroborated testimony in which discrepancies and variations appeared was insufficient to convict. *It is significant that in Bazemore there was no surveillance by police of any portion of the informer's activities in making the purchase, and the arrest of the defendant did not occur until some two months later.*" [Emphasis supplied.]

In the Realmo case the police officers observed substantially all of the defendant's activities in making the controlled purchase except the actual transfer of the narcotics and the marked money. As to that, Officer Lopez testified that he saw defendant hand something to the informer near the entrance to defendant's residence, which was the location where the informer testified he was handed the drug. The rule laid down in the Realmo case does not affect the holding in Bazemore. People v. Drumwright, 48 Ill App2d 392, 199 NE 2d 282, is in accord with Bazemore. In that case there was a close watch kept by a police officer, although he did not actually see the transfer.

 In the instant case there is no evidence that the defendant at the time of the alleged sale was anywhere in the neighborhood. Following the rule laid down in the Bazemore case, the evidence introduced by the State in the instant case did not contain sufficient corroborative testimony to convict Roscoe Minor beyond

470

a reasonable doubt. The judgment of the Circuit Court of Cook County is reversed.

Reversed.

DRUCKER, P. J., and ENGLISH, J., concur.