**People of the State of Illinois, Plaintiff-Appellee, v. Charles E. Gilmer, Defendant-Appellant.**

**Gen. No. 52,134.**

First District, Second Division.

April 29, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant, Charles E. Gilmer, was indicted for the unlawful sale of narcotic drugs. He was tried before a jury, found guilty, and sentenced to serve not less than ten nor more than eleven years in the Illinois State Penitentiary. The defendant appealed from the judgment of the trial court and in this court argues:

1) His constitutional rights were violated when the prosecutor commented on suppressed evidence in his closing argument to the jury;
2) The prosecutor's closing argument was so improper and prejudicial that defendant was denied his right to a fair trial;
3) The defendant was denied his right to a fair trial when the trial judge admitted evidence that defendant committed a subsequent, unrelated offense; and
4) The evidence presented in the trial court was not sufficient to prove defendant's guilt beyond a reasonable doubt.

On May 11, 1966, two police officers met an informer at a gas station at 47th and State Streets in Chicago. The informer, John Preston (alias Allen Cole), had told the officers he knew where to illegally purchase narcotics. The police stripped and searched the informer to verify that he did not possess narcotics before making contact with the defendant, and he was given $25 in prerecorded bills, then taken to the vicinity of Michigan Avenue and 42nd Street, where he left the car and went to the southeast corner of 43rd and Michigan. The officers remained inside the unmarked police car from which they witnessed the meeting of the defendant and the informer.

When the two men started walking south on Michigan Avenue, Officer Arnold left the police car and followed them to the apartment building at 4420 South Michigan

where the defendant lived. The two men went into the building and, according to the informer's testimony, went up to the defendant's apartment. The defendant asked if he was interested in purchasing narcotics, and the informer said he was. The defendant asked the informer how much money he had and when he was told, the defendant took the money and left the other man in the apartment while he went down the hall. When he returned he gave the informer a small tinfoil package which the informer turned over to Officer Arnold as soon as he left the building. This incident, from the time the men entered the apartment building, took from three to five minutes.

Officer Arnold field tested the contents of the packet which revealed the presence of opium; the two officers then entered the foyer of the apartment building where they arrested the defendant for the unlawful sale of narcotics.

The defendant was placed in Tier D-2 of Cook County Jail, awaiting trial. On November 19, 1966, the informer was also incarcerated in the Cook County Jail on a petty theft charge, and was also placed in Tier D-2. On December 8, court call slips were sent over for both men, notifying them they were to appear that day for defendant's trial. In his testimony the informer said that when the defendant discovered he was in the same tier, he and some of his cellmates beat the informer severely when the defendant told the informer, "I should kill you. You are supposed to go and testify against me today."

The defendant testified that the informer was beaten because the inmates believed he was in jail "getting information on everybody up here." The defendant further testified that he had seen the informer for the first time in his life in Cook County Jail, and that he had never struck the informer.

During his opening statement to the jury the State's Attorney referred to the beating of the informer, saying

he "was beaten by the defendant and beaten severely." Defense objected and the objection was overruled. The defense again objected to the informer's direct examination in which he was allowed to relate to the jury the circumstances surrounding his beating at the jail. During direct examination the informer admitted he had been a narcotics user "back in the fifties."

The defendant further urges that the closing argument was so improper and prejudicial that he was denied a fair trial; that the trial court committed reversible error in admitting evidence about the beating of the informer, an offense of the defendant's subsequent to and unrelated to the offense charged in the indictment; and finally, the defendant contends that he was not proved guilty beyond a reasonable doubt, when the consideration of the suppressed currency is removed.

We shall consider the latter argument first, since if the defendant is correct in asserting that he has not been proved guilty beyond a reasonable doubt, the judgment must be reversed, while error on the other points would justify no more than a reversal of the judgment and a remand of the cause. Defendant's argument on this point is that the conviction rests on the uncorroborated testimony of an addict-informer, and there was not enough substantiating evidence to convict the defendant of selling narcotics.

In People v. Bazemore, 25 Ill2d 74, 182 NE2d 649, the Supreme Court reversed a conviction for the unlawful sale of narcotics. The defendant was not found in the area, nor had the police seen the informer and the defendant together. The defendant was arrested two months later on a charge of unlawful sale of narcotics. The court said at page 76:

"Where, as here, the State's case rests solely upon the credibility of an admitted narcotics addict, a trial court, and in the final analysis this court, must carefully and closely scrutinize the testimony

76

of the witness. [Citing cases.] Although it does not necessarily follow that his testimony must be disbelieved (People v. Barney, 15 Ill2d 503), the fact that a witness is a narcotics addict has an important bearing on his credibility."

All this statement says is that the courts must carefully scrutinize the testimony of narcotics addicts since they are not as likely to tell the truth as normal witnesses. However, it is worthy of note that in the instant case there is no testimony in the record showing that the informer was a narcotics addict at the time of his arrest or during trial.

In People v. Realmo, 28 Ill2d 510, 512, 192 NE2d 918, the court commented on its holding in Bazemore, stating that there "an admitted addict's wholly uncorroborated testimony in which discrepancies and variations appeared was insufficient to convict. It is significant that in Bazemore there was no surveillance by police of any portion of the informer's activities in making the purchase, and the arrest of the defendant did not occur until some two months later."

By contrast, in the case before us, the informant's testimony was corroborated insofar as it could have been, and there was surveillance by the police which established that the informer and the defendant met, conversed and went to defendant's apartment. They were both out of visual contact of police for only three to five minutes, after which time the informer came directly to Officer Arnold and handed him the packet which proved to contain narcotics. Also, as we have pointed out, there was no evidence that at the time of the arrest or of the trial the informer was a narcotics addict.

██ ██ In a recent case concerning an indictment for the unlawful sale of narcotics, People v. Smith, 41 Ill2d 158, 242 NE2d 198, the informer was an addict at the time of trial. The court held that while that fact had a bearing upon his credibility, it did not follow that his

testimony must necessarily be disbelieved, especially when corroborated by other witnesses, citing People v. Hamby, 6 Ill2d 559, 129 NE2d 746. In Smith, the testimony of two police officers was contradictory in some respects. The court held that the testimony of Officer Paschal substantially corroborated that of the informer, and stated at page 161:

> "There are conflicts in the testimony of Henry and Paschal, but the determination of such conflicts is a function of the trial court. (People v. Wysocki, 20 Ill2d 62.) In our opinion, the evidence was sufficient to sustain the finding of the trial court."

In the case before us, where the conflict is in the testimony of the defendant and the informer, the same rule should apply.

The defendant also cites People v. Minor, 70 Ill App2d 464, 217 NE2d 316; however, the facts in that case are in no respect similar to those in the instant case.

The fact that the defendant testified he had never met the informer before the altercation in the jail— which statement is in direct opposition to the testimony of the informer and the police officer—merely raises a question of fact for the determination of the trier of fact.

██ Defendant further argues that he was deprived of his constitutional rights by the statement of the State's Attorney in his closing argument. On December 7, 1966, a hearing was held on defendant's motion to suppress evidence consisting of marked U. S. currency which had been taken from his apartment on May 11, 1966, during a search without a warrant. In his closing argument a State's Attorney made the following statement to the jury:

> "Now, the officers told you that after they gave this money to the informer he went into the building and three or five minutes elapsed, then they placed

the defendant under arrest. Certainly we would like to present all possible evidence. You heard nothing about a search warrant where the officers went up and searched the premises and recovered this money. We presented you the evidence we had."

The defendant objected to these statements and the objection was sustained; the court instructed the jury to disregard the statements of the State's Attorney.

The Fourth Amendment of the United States Constitution and section 6 of article II of the Illinois Constitution both have substantially the same provision in guaranteeing protection against unreasonable searches and seizures. In Mapp v. Ohio, 367 US 643, it was held that the exclusionary rule was a necessary concommitant of the Fourth and Fourteenth Amendments, and to allow evidence to be admitted against the defendant when such evidence had been obtained in violation of defendant's right to be secure against unreasonable searches and seizures, would render the Fourth Amendment meaningless.

In People v. Castree, 311 Ill 392, 143 NE 112 (1924), the court held that evidence obtained by an unreasonable search and seizure was not admissible; and in People v. Luna, 37 Ill2d 299, 226 NE2d 586, the court reversed a conviction where a defendant had been impeached with testimony he had given at a pre-trial hearing to suppress.

In the instant case the State argues that the intent of the prosecutor was not to prejudice the rights of the defendant. It is really immaterial as to what the prosecutor intended; what is material is the consequence of his action. The State argues that the last three sentences of the questioned portion of its closing argument "logically establishes a basis on which a conclusion may be founded that the prosecutor only wished to point out to the jury that no evidence was presented during the trial relating to a search of defendant's apartment or

recovery of any of the marked money given the informant because the prosecution did not possess such evidence."

The purported concern of the State's Attorney to point out to the jury the weakness in the State's case appears highly questionable. Furthermore, it could hardly be called common practice for an attorney to point out all the elements which were not presented in evidence. The State's Attorney's comment that the State did not present evidence of the prerecorded money found in the search of defendant's apartment, could well have been taken by the jury to mean that such evidence was available but for some reason was not presented in a formal manner.

In Fahy v. Connecticut, 375 US 85 (1963), the court held that the determining factor was whether there was a reasonable possibility that improperly introduced evidence might have contributed to the conviction. We believe that such a reasonable possibility was injected into the record in the instant case by the comments of the State's Attorney; therefore, the judgment is reversed and the case remanded for a new trial.

Because of our disposition of this case there is no need to comment on the other alleged errors argued by the defendant.

Reversed and remanded.

LYONS, P. J. and BURKE, J., concur.