NOTICE

Decision filed 02/23/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0533

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the |
| ) | Circuit Court of |
| Plaintiff-Appellee, ) | St. Clair County. |
| ) | |
| v. ) | No. 03-CF-886 |
| ) | |
| FELICIA TROTTER, ) | Honorable |
| ) | John Baricevic, |
| Defendant-Appellant. ) | Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

The defendant, Felicia Trotter, was found not guilty by reason of insanity (NGRI) on charges of aggravated kidnaping (720 ILCS 5/10-1(a), 10-2(a)(2) (West 2004)). Subsequently, the circuit court of St. Clair County ordered the defendant committed to the Department of Human Services for a time not to exceed 25½ years. On appeal, the defendant challenges the sufficiency of the evidence on the essential elements of the offense, contending that there was no aggravated kidnaping because there was no "secret confinement" of the victim. See 720 ILCS 5/10-1(a) (West 2004). As a result, the defendant argues that she should have been found not guilty of aggravated kidnaping, rather than NGRI.

Before addressing the issue raised by the defendant on appeal, we must resolve a threshold matter raised by the State regarding whether this court has jurisdiction to review this case on appeal. The State asserts that while the right to appeal a criminal *conviction* is fundamental and guaranteed by the Illinois Constitution (*People v. Rovito*, 327 Ill. App. 3d 164, 168 (2001) (citing Ill. Const. 1970, art. VI, §6)), "there shall be no appeal from a

1

judgment of acquittal" (Ill. Const. 1970, art. VI, §6).  The State contends that a verdict of NGRI is essentially an acquittal and that this court consequently lacks jurisdiction over this appeal.  In response, the defendant argues that jurisdiction is proper because a verdict of NGRI presupposes that every element of the underlying offense is proven beyond a reasonable doubt.

In support of its position, the State cites *People v. Harrison*, 366 Ill. App. 3d 210, 214 (2006), *appeal allowed*, 221 Ill. 2d 654 (2006), in which our colleagues in the First District ruled that they lacked jurisdiction to review the defendant's case because a verdict of NGRI is "in all form and substance" an acquittal.  The *Harrison* court reasoned that a defendant found NGRI faces no criminal responsibility and is ultimately free.  *Harrison*, 366 Ill. App. 3d at 218.  The court noted that while such a defendant may be held in a mental health facility, he is eventually released and discharged just as any other acquitted defendant. *Harrison*, 366 Ill. App. 3d at 216.  Moreover, the court did not deem confinement in a mental health facility to be punishment but, rather, treatment and protection for the defendant as well as society.  *Harrison*, 366 Ill. App. 3d at 216-17 (citing *Jones v. United States*, 463 U.S. 354, 368-69, 77 L. Ed. 2d 694, 708, 103 S. Ct. 3043, 3051-52 (1983)).  The *Harrison* court ruled that it could exercise no jurisdiction over the defendant's cause because it could bestow no greater relief upon the defendant than the freedom from guilt which he had already received. *Harrison*, 366 Ill. App. 3d at 218.  The *Harrison* court also concluded that for double jeopardy purposes, a defendant who has been found NGRI "may not be retried on the same offense."  *Harrison*, 366 Ill. App. 3d at 215.

Although we agree with the *Harrison* court that a defendant found NGRI, like a defendant acquitted generally, may not be retried on the same offense pursuant to long-settled principles of double jeopardy, we believe that the similarities between a general acquittal and a finding of NGRI end there.  Accordingly, we cannot conclude that a verdict of NGRI is "in

all form and substance" an acquittal. See *Harrison*, 366 Ill. App. 3d at 214. To the contrary, we find that for purposes of determining the jurisdiction of this court to review a finding of NGRI, at least two fundamental differences between a general acquittal and a finding of NGRI convince us that we have jurisdiction to review a finding of NGRI. These differences raise questions related both to a substantial liberty interest and to equal protection.

The first fundamental difference between a general acquittal and a finding of NGRI is found in the statutorily prescribed procedure that follows a finding of NGRI. Following a general acquittal, a criminal case ends, and as the *Harrison* court noted, "a defendant who has been acquitted and declared not guilty may not be retried on the same offense." *Harrison*, 366 Ill. App. 3d at 215. We note that although the *Harrison* court cites the language of section 104-25(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-25(c) (West 2002)) that directs courts to "enter a judgment of acquittal" when a defendant is found NGRI as evidence that a finding of NGRI is the equivalent of an acquittal, section 104-25(c) is, by its own terms, relevant only to a finding of NGRI following a discharge hearing after a determination that a defendant is not fit for a trial and will not become so within one year (see 725 ILCS 5/104-23(a), 104-25(c) (West 2004)). This section does not speak at all to an NGRI finding following a trial. Accordingly, we do not believe that the use of the term "acquittal" in section 104-25(c) is meant to imply that an NGRI finding following a trial is somehow the legal equivalent, for all purposes, of a general acquittal. Indeed, section 115-4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-4 (West 2004)), which does govern an NGRI finding following a trial by a jury, does not contain language directing courts to "enter a judgment of acquittal" when a defendant is found NGRI.

Following either a section 104-25(c) NGRI finding following a discharge hearing or a section 115-4 NGRI finding following a trial by a jury, the court must turn to section 5-2-4 of the Unified Code of Corrections (Code) (730 ILCS 5/5-2-4 (West 2004)), which spells out

3

the proceedings to take place after an "Acquittal by Reason of Insanity." Although section 5-2-4 uses the term "acquittal" to encompass a finding made under either section, again we do not believe that the use of the term "acquittal" under these circumstances is meant to imply that an NGRI finding following a trial is somehow the legal equivalent, for all purposes, of a general acquittal, for the procedural requirements that follow in the section are too far removed from those that follow a general acquittal to legitimately be equated therewith. Although the *Harrison* court focused on section 5-2-4(a) of the Code (730 ILCS 5/5-2-4(a) (West 2002)), which details the first of those procedures–the discharge from custody of a defendant found both NGRI and "not in need of mental health services"–we believe it is more appropriate, for purposes of comparing a finding of NGRI with a general acquittal, to focus on section 5-2-4(b) of the Code (730 ILCS 5/5-2-4(b) (West 2004)), which states that a defendant found NGRI is subject to as many years in a mental health facility as the maximum potential prison sentence for a defendant found guilty of the same charged offense. In this case, the circuit court ordered the defendant committed to the custody of the Department of Human Services for a period of time not to exceed 25½ years. Contrary to the State's argument–and the *Harrison* court's conclusion that a defendant found NGRI is no more "aggrieved" than one who is acquitted generally (*People v. Harrison*, 366 Ill. App. 3d 210, 218 (2006))–the defendant in this case certainly is more aggrieved than would be one who was acquitted generally of the charge of aggravated kidnaping: the defendant here is being detained against her will in a mental health facility and could potentially spend the rest of her life there. This striking fact highlights a key difference between a finding of NGRI and a general acquittal: whereas no liberty interest is implicated following a general acquittal, a substantial liberty interest–a potentially long-term confinement in a mental health facility–may be implicated following a finding of NGRI. See *People v. Marshall*, 273 Ill. App. 3d 969, 974-95 (1995) (a substantial liberty interest is implicated when one is detained

4

in a mental health facility). In addition, a defendant found NGRI may continue to bear the inherent stigma associated with the underlying factual allegations–which according to the *Harrison* court the defendant is precluded from challenging–despite the defendant's purported "acquittal." Given this key difference, we simply cannot agree with the *Harrison* court that a defendant found NGRI has not been "aggrieved," and we cannot conclude that a finding of NGRI is the legal equivalent of a general acquittal.

The second fundamental difference between a general acquittal and a finding of NGRI is that before a defendant may be found NGRI, the State is required to prove the defendant guilty beyond a reasonable doubt of every element of an offense charged. *People v. Wells*, 294 Ill. App. 3d 405, 408 (1998); 720 ILCS 5/6-2(e) (West 2004); see also *People v. Gold*, 38 Ill. 2d 510, 513 (1967) (a special verdict of NGRI requires the jury to find that the defendant committed the offense charged but was insane while committing the act). As the *Wells* court noted, one of the prerequisites to finding a defendant NGRI is that the defendant must have committed an act that constitutes a criminal offense. *Wells*, 294 Ill. App. 3d at 407 (two facts are established when a defendant receives a verdict of NGRI: (1) the defendant committed an act that constitutes a criminal offense and (2) the defendant committed the act because of mental illness (relying on *Jones v. United States*, 463 U.S. 354, 363, 77 L. Ed. 2d 694, 705, 103 S. Ct. 3043, 3049 (1983))). Only after it has been established that the defendant committed an act that constitutes a criminal offense does the trier of fact consider the defense of insanity. 725 ILCS 5/115-3, 115-4 (West 2004). Clearly, there is–and could be–no such requirement for a general acquittal. This difference in the legal preconditions for a finding of NGRI and a general acquittal, too, militates against the conclusion that a finding of NGRI and a general acquittal are for all purposes legal equivalents.

We note as well that the position taken by the *Harrison* court–and advocated by the State in this case–would also create the untenable situation in which one who was found

5

guilty but mentally ill would have the same full appellate rights–including the right to challenge the sufficiency of the evidence–as anyone else convicted of a criminal offense, while one found NGRI would not be able to challenge the facts of the underlying offense.

The fundamental differences between a finding of NGRI and a general acquittal lead us to conclude that for purposes of appellate review, a finding of NGRI is not the legal equivalent of a general acquittal, as contemplated by the Framers of the Illinois Constitution. Accordingly, we do not believe that section 6 of article VI of the Illinois Constitution of 1970 prevents this court from reviewing this case. See Ill. Const. 1970, art. VI, §6 ("there shall be no appeal from a judgment of acquittal"). Accordingly, we turn now to the facts necessary to the disposition of this appeal.

At the trial, Latosha Peltier testified that on July 6, 2003, she went to the hospital to pick up one of her children, who had been visiting Peltier's mother on the third floor. Ms. Peltier's 13-month-old son was sleeping, so she left him in the vehicle by himself with the doors unlocked and the windows open. She testified that the baby was strapped into his car seat when she went into the hospital. When Ms. Peltier returned 10 minutes later, the baby was gone. Immediately, Ms. Peltier asked a hospital security guard if he had seen anyone with a baby. He replied that he had not. Ms. Peltier then saw some police officers leaving the hospital and asked them if they could help her find her baby.

Rick Perry, a detective for the East St. Louis police department, testified that on July 6, 2003, he was called to the hospital to investigate a child abduction. After interviewing Ms. Peltier he returned to his office, where he received a phone call from the Alorton police department regarding a woman who was acting strangely and who had a baby with her at the MotoMart across the street from Southwestern Illinois College in Belleville. Detective Perry proceeded to the MotoMart, where he found the baby and the defendant, along with Perlisa Wright, a security guard from the college, and an officer from the St. Clair County sheriff's

6

department.

Officer Wright testified that she worked primarily as a police officer for the Centreville police department. However, on July 6, 2003, Officer Wright was on duty at her second job as a security guard for Southwestern Illinois College in Belleville, when "a couple of people" approached her to report that they had been on the train and interacted with a woman passenger (the defendant) who had a baby with her and told them that the baby was not hers. The defendant had disembarked from the train at the college. When Officer Wright spotted the defendant, she approached her, identified herself as a police officer, and asked her where she was from and where she was going. The defendant introduced herself as Felicia Green from East St. Louis, and she said that she had taken her six-month-old granddaughter, Beverly Green, on the train to Belleville because the baby's mother and her boyfriend were having an argument. The defendant also told Officer Wright that she had gotten off the train because it was very hot and she was taking the baby to cool off at the college.

After the exchange with Officer Wright, the defendant walked across the parking lot. Officer Wright kept the defendant in sight and called the Alorton police department to check the information given by the defendant. Although the records check returned the name "Felicia Green" without a record, Officer Wright remained suspicious because of the defendant's statement to the people on the train that the baby was not hers. Officer Wright then observed the defendant put the baby down. The baby began to walk around and play. At that point, Officer Wright knew that the defendant had given an inaccurate report of the baby's age, because six-month-old infants are incapable of walking. Officer Wright decided to contact the police department in East St. Louis to inquire about a missing baby. It was then that Detective Perry was notified.

Officer Wright testified that she followed the defendant across the street to the

7

MotoMart. When Officer Wright did not see the defendant inside the store, she asked the clerk if a woman had come in with a baby. The clerk replied that a woman had taken a baby into the restroom. Officer Wright approached the restroom, but the door was locked. When Officer Wright heard a baby crying inside the restroom, she told the defendant to open the door. Officer Wright testified that when the defendant emerged from the restroom with the baby, she smiled and said: "[O]kay, I guess you got me[.] I guess you know by now." Officer Wright testified on cross-examination that the defendant had never left her sight. She watched the defendant walk all the way to the MotoMart, where she remained until Detective Perry and the St. Clair County sheriff's department arrived.

Dr. Daniel Cuneo, a clinical psychologist, testified to a reasonable degree of psychological certainty that the defendant was insane at the time of the events in issue. A jury found the defendant NGRI on charges of aggravated kidnaping (720 ILCS 5/10-1(a), 10-2(a)(2) (West 2004)). Subsequently, the circuit court of St. Clair County ordered the defendant committed to the Department of Human Services for a time not to exceed 25½ years.

On appeal, the defendant challenges the sufficiency of the evidence regarding the essential elements of the offense, contending that there was no aggravated kidnaping because there was no "secret confinement" of the victim. See 720 ILCS 5/10-1(a) (West 2004). We note that because the State did not address this issue in its brief, we assume that it does not disagree with the defendant's position and thereby waives the issue. See *People v. Haag*, 80 Ill. App. 3d 135, 137 (1979) (issues not addressed by the appellee in the appellee's brief are deemed waived); see also Official Reports Advance Sheet No. 12 (June 7, 2006), R. 341(h)(7), eff. September 1, 2006 (points not argued in an opening brief are waived and shall not be raised in the reply brief, in oral argument, or in a petition for rehearing); Official Reports Advance Sheet No. 12 (June 7, 2006), R. 341(i), eff. September 1, 2006 (Supreme

Court Rule 341(h)(7) also applies to the appellee's brief). However, even if the issue were not waived, for the reasons set forth below, we reverse the trial court's judgment of NGRI because the State failed to prove the elements of aggravated kidnaping beyond a reasonable doubt.

When reviewing a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational fact finder could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). It is not the duty of this court to retry the defendant but, rather, to examine the evidence, bearing in mind that the jury had the opportunity to observe the witnesses. *Smith*, 185 Ill. 2d at 541. While the jury's finding is entitled to great deference, it is not conclusive. *Smith*, 185 Ill. 2d at 542. If we find the evidence so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt is created, we will reverse the conviction. *Smith*, 185 Ill. 2d at 542.

Pursuant to section 10-1(a) of the Criminal Code of 1961 (720 ILCS 5/10-1(a) (West 2004)), kidnaping occurs when a person knowingly and secretly confines another person against his will, or carries a person from one place to another with the intent to secretly confine him against his will, or deceives another person into going from one place to another with the intent to secretly confine him against his will. The confinement of a child under the age of 13 is considered "against his will" if it is without the consent of his parent or legal guardian. 720 ILCS 5/10-1(b) (West 2004). Moreover, if the victim is a child under the age of 13, the offense rises to the level of aggravated kidnaping. 720 ILCS 5/10-2(a)(2) (West 2004). Secret confinement is demonstrated by either the secrecy of the confinement or the place of the confinement. *People v. George*, 326 Ill. App. 3d 1096, 1101 (2002) (citing *People v. Mulcahey*, 72 Ill. 2d 282, 285 (1978)). In cases where the proof of a secret confinement was established, the victim was clearly confined or enclosed within something,

9

usually a house or a vehicle. *People v. Sykes*, 161 Ill. App. 3d 623, 628 (1987). The word "secret" has been defined as " '[c]oncealed; hidden; not made public; particularly, in law, *kept from the knowledge or notice of persons liable to be affected* by the act, transaction, deed, or other thing spoken of.' " (Emphasis in original.) *George*, 326 Ill. App. 3d at 1101 (quoting Black's Law Dictionary 1352 (6th ed. 1990)).

In this case, the defendant contends that the State failed to prove that the baby was secretly confined, which is an essential element of aggravated kidnaping (720 ILCS 5/10-1(a) (West 2004)). Thus, the defendant argues that she should have been found not guilty of aggravated kidnaping, rather than NGRI. We agree. The baby was never secretly confined because the defendant never removed the baby from the public's view or awareness. After taking the baby from the vehicle at the hospital, the defendant boarded the train, where she was in constant contact with other people. The defendant disembarked from the train in Belleville, then interacted with Officer Wright, who kept the defendant in sight and watched her walk into the MotoMart. Although the defendant took the baby into the restroom for a few minutes, this does not equate to secret confinement, because both the clerk and later Officer Wright were aware of the defendant's presence in the restroom with the baby. See *People v. Pasch*, 152 Ill. 2d 133 (1992) (an aggravated kidnaping conviction was reversed; although the defendant held the victim hostage in an apartment, many were aware of it); see also *People v. Sykes*, 161 Ill. App. 3d 623, 625-29 (1987) (an aggravated kidnaping conviction was reversed; although the defendant grabbed the victim, pulled her into an alley, and attempted to enter an abandoned building, no secret confinement was found because the victim was not at any time hidden or not made public during the entire incident); *People v. Lamkey*, 240 Ill. App. 3d 435, 439-40 (1992) (an aggravated kidnaping conviction was reversed; there was no secret confinement because the victim was never outside the public's view but was in a room with a glass door where people were seen walking on the sidewalk

10

and the defendant made no attempt to further conceal the victim). In the case at bar, at no point did the defendant secretly confine, or show an intent to secretly confine, the baby. At best, the facts of this case support a possible conviction for unlawful restraint, which was not charged. See 720 ILCS 5/10-3 (West 2004). Based on the totality of the circumstances, no rational trier of fact could have found that the State met its burden in proving a secret confinement beyond a reasonable doubt. Accordingly, the trial court's judgment of NGRI is hereby reversed, and pursuant to Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we enter a judgment of acquittal.

Reversed.

CHAPMAN and STEWART, JJ., concur.

11

NO. 5-05-0533

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 03-CF-886 |
| | ) | |
| FELICIA TROTTER, | ) | Honorable |
| | ) | John Baricevic, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed**: February 23, 2007

---

**Justices**: Honorable Stephen L. Spomer, J.

Honorable Melissa A. Chapman, J., and
Honorable Bruce D. Stewart, J.,
Concur

---

**Attorneys for Appellant**: Daniel M. Kirwan, Deputy Defender, Lawrence J. O'Neill, Assistant Defender, Office of the State Appellate Defender, Fifth Judicial District, 117 North Tenth Street, Suite 300, Mt. Vernon, IL 62864

---

**Attorneys for Appellee**: Hon. Robert Haida, State's Attorney, St. Clair County, 10 Public Square, Belleville, IL 62220; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Rebecca E. McCormick, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864