THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AURELIA GONZALEZ, Defendant-Appellant.

First District (1st Division)   No. 1—08—0869

Opinion filed June 8, 2009.

GARCIA, J., concurring.
GORDON, ROBERT E., J., dissenting.

Marc R. Kadish, Heather Lewis Donnell, Nicole J. Highland, Sarah E. Reynolds, and Katrina A. Hochstetler, all of Mayer Brown LLP, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald and Nancy Colletti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Throughout the trial, defendant insisted she could not be found guilty of aggravated kidnapping. She claimed there was insufficient evidence she secretly confined the infant she carried away from the Stroger Hospital Fantus Clinic. Neither the jury nor the trial court agreed.

The jury found defendant Aurelia Gonzalez guilty but mentally ill of aggravated kidnapping and unlawful restraint. Defendant was sentenced to concurrent prison terms of six years and three years. On appeal, defendant contends the State failed to prove beyond a reasonable doubt she committed the offense of aggravated kidnapping. Defendant also contends she suffered prejudice when the prosecutor referred to the substance of her suppressed statement during rebuttal argument. We reverse the aggravated kidnapping conviction and affirm the conviction and sentence for unlawful restraint.

FACTS

State witnesses testified that on March 2, 2006, Mirabel and Joel Oceguera were in the waiting room at the Stroger Hospital Fantus Clinic (Fantus Clinic) with their three-week-old baby. Defendant sat next to them. Mirabel recognized defendant from the neighborhood. Defendant appeared pregnant.

Later, Mirabel excused herself from the waiting room to take a phone call, leaving the baby with Joel. While she was away, Joel was called to the reception desk to complete paperwork. When the Ocegueras' baby began crying, defendant offered to hold her. Joel agreed. After Joel finished the paperwork, defendant and the baby were gone. Joel left the waiting room and checked for his baby in the surrounding area of the hospital. He then exited the hospital and checked the outside grounds. Joel testified a stranger pointed him in the direction that defendant had gone. The stranger was standing at a

stop sign 10 to 15 feet away from the hospital. When asked whether the stranger told him that a woman and a baby went in the designated direction, Joel replied yes.

When she completed her phone call, Mirabel returned to the waiting room. A man said something to her to make her begin searching for her baby. When asked whether that was the first time she learned her child had been taken from the waiting room, Mirabel testified the man had watched what happened. Mirabel called Joel. She confirmed he was looking for their missing baby. She called 911. Mirabel then flagged down a police car. She rode with the police in their car to look for the baby near the hospital. The officers received a message on their radio that a suspect was being held at Rush University Medical Center (Rush).

Within 15 minutes of Joel realizing the baby was missing, Damien Hopkins, a Rush security guard, stopped defendant in a restricted section of the Rush emergency room. The area was accessible only to doctors and patients. Rush is located on Harrison Street, approximately two or three blocks from Fantus Clinic. Hopkins saw "a woman carrying a baby." The baby was wrapped in a white and pink "blanket." Defendant appeared nervous. When Hopkins approached her, she began to walk away. Damien Hopkins followed and stopped her. Defendant then attempted to bribe Hopkins with $20. Hopkins called for assistance. A nurse took the baby from defendant.

Officer Jackie Gregory testified that she picked Mirabel up after being flagged down. When Officer Gregory received the radio announcement regarding the possible suspect, she brought Mirabel to Rush. When they arrived, Officer Marianne Cullotta "was holding the baby and there were a lot of Rush security along with other Chicago Police Department personnel."

Officer Cullotta testified that she was in the area when she received a flash alert describing defendant and the baby. Officer Cullotta noticed a number of security guards running into a building at Rush. Officer Cullotta and her partner followed. When they entered Rush, Officer Cullotta saw "defendant, a lady, actually standing there with a baby."

The baby was returned to the Ocegueras. Mirabel testified that her baby was wrapped in a white and pink baby towel covering her body and head.

After the close of the State's case, defendant moved for a directed verdict. The trial court denied the motion. Defendant appeals her aggravated kidnapping conviction.

DECISION

Defendant contends the State failed to prove her guilty of aggravated kidnapping beyond a reasonable doubt. Specifically, she

contends the State failed to prove she "secretly confined" the Ocegueras' baby, as required by the statute.

We are not asked to resolve conflicts in testimony. Nor are there credibility issues to resolve. The only question before us is whether the uncontested evidence falls within the statutory elements of the aggravated kidnapping offense. We find it does not.

When reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Secret confinement is an essential element of kidnapping. *People v. Riley*, 219 Ill. App. 3d 482, 487, 579 N.E.2d 1008 (1991).

■ An individual commits the offense of kidnapping when he or she knowingly "[a]nd secretly confines another against his will." 720 ILCS 5/10—1(a)(1) (West 2006). An individual commits aggravated kidnapping when the victim is under 13 years old. 720 ILCS 5/10—2(a)(2) (West 2006).

■ No more than 15 minutes went by between the time defendant left the Fantus Clinic with the baby until she was arrested at Rush University Medical Center. She walked on a busy street to get to Rush. Everybody who saw her—strangers, hospital security guards, and police officers—immediately realized defendant was carrying a baby. Towel or not, everyone saw the baby. In fact, the State is frank in its brief: "That defendant was carrying a baby may have been obvious to those passing her on the street ***," and "While it may have been obvious to the public that Rebecca Oceguera was a tiny baby being carried down the street by the defendant ***."

Secret confinement is the "gist of kidnapping." *People v. Lamkey*, 240 Ill. App. 3d 435, 438, 608 N.E.2d 406 (1992). It is demonstrated "by proof of either the secrecy of confinement or the place of confinement." *People v. Sykes*, 161 Ill. App. 3d 623, 628, 515 N.E.2d 253 (1987). Here, there was no secret confinement and there was no place of confinement, as those elements of proof are defined by the cases.

What happened here is not the child buckled in the backseat of a speeding van with tinted windows. *People v. Goodwin*, 381 Ill. App. 3d 927, 888 N.E.2d 140 (2008). Nor is it the 12-year-old being kept in the offender's house for parts of four days. *People v. George*, 326 Ill. App. 3d 1096, 762 N.E.2d 1145 (2002). It is not the child taken to a viaduct late at night, with no one else around. *People v. Turner*, 282 Ill. App. 3d 770, 668 N.E.2d 1058 (1996). Nor is it the overgrown, isolated dark field in *People v. Franzen*, 251 Ill. App. 3d 813, 622 N.E.2d 877 (1993).

This case is closer to *Lamkey* and *Sykes*. In *Lamkey*, the defendant jumped out of a doorway, grabbed the wrists of a 10-year-old girl, pulled her into a hallway, and pushed her against a wall. The hallway was visible through a glass door. It was located a couple of steps from a busy thoroughfare. The court reversed defendant's aggravated kidnapping conviction, holding the State failed to prove the element of secret confinement. *Lamkey*, 240 Ill. App. 3d at 439.

In *Sykes*, the defendant confronted a 10-year-old girl as she approached a school playground at 8:30 a.m. He pulled her into an alley. They went through two or three alleys, until they reached but did not enter a partially vacant building, then returned to the street. Reversing the defendant's aggravated kidnapping conviction, the court held that was not the secret confinement envisioned by the kidnapping statute. *Sykes*, 161 Ill. App. 3d at 628 ("In the instant case, the victim simply was not confined or enclosed within any place or any thing").

It is the constant "public view or awareness" of the child that takes this case out of the kidnapping statute. *People v. Trotter*, 371 Ill. App. 3d 869, 877, 864 N.E.2d 281 (2007), *overruled on other grounds by People v. Harrison*, 226 Ill. 2d 427, 877 N.E.2d 432 (2007).

The prosecution in this case apparently was concerned about the paucity of secret confinement proof. During rebuttal argument the prosecutor reached into the defendant's previously suppressed statement to add two facts: "She covered it [the baby] in a blanket, put it in her jacket, and ran." There was no such evidence. Because of our conclusion in this case, we will not stop to consider the gravity of the prosecutor's misstatement.

The statute says what it says, and the "secretly confined another" element of the offense cannot be read out of the statute by making the obvious observation that the baby's parents did not know where the infant was during the critical 15 minutes. This was, as the jury found, a matter of unlawful restraint, since defendant "knowingly without authority" detained the baby. 720 ILCS 5/10—3 (West 2006).

It could very well be that it would be sensible to amend the kidnapping statute to apply to the facts we see in this case—a baby taken from his or her parents and kept in plain and public view until the culprit is apprehended. But, amending statutes is not our job, no matter how salutary the purpose would be. For the time being, at least, "secretly confines another" is part of the statute. Attention must be paid.

We need not address defendant's remaining claim.

CONCLUSION

We reverse defendant's aggravated kidnapping conviction and affirm defendant's unlawful restraint conviction and sentence.

Affirmed in part; reversed in part.

JUSTICE GARCIA, concurring:

While I agree completely with Justice Wolfson's opinion, because I find the prosecutor's use of previously suppressed statements borders on prosecutorial misconduct, I comment on the prosecutor's rebuttal argument to the jury to make clear it should not happen again. See *People v. Gilmer*, 110 Ill. App. 2d 73, 79, 249 N.E.2d 129 (1969) (State's intent in its argument to the jury was immaterial; "what is material is the consequence of his action").

A hearing was held on the defendant's motion to suppress statements that she gave at the time of her arrest. An evidentiary hearing was held before the same trial judge that presided over the jury trial. The State vigorously challenged the defendant's claim; it lost. The trial judge entered an order excluding the defendant's statements from the use at trial. The State did not appeal; the order became final. The final order of the trial court barred the evidence from *any* use by the State in the prosecution of the defendant no less so than the final order bars this court from considering suppressed evidence in assessing the sufficiency of the evidence as to the aggravated kidnapping charge. To reinforce that the suppressed statements were out of bounds in the State's argument to the jury, to quote the defendant from her main brief, "Ms. Gonzalez made a motion *in limine* regarding the suppressed statements to preclude the State from referring to evidence from the statement during the trial." With or without the motion *in limine*, the State was bound by the trial court's suppression order. Yet, the State used the substance of the suppressed statements in its rebuttal argument.

Before us, the State seeks to have it both ways regarding the offending comments made in rebuttal. It contends the offending comments "should not have been made" while pointing to a remark attributed to the trial court "that [the comments] were inferences that could be drawn from the evidence." I agree with the former and reject the latter. See *People v. Edwards*, 49 Ill. App. 3d 79, 83, 363 N.E.2d 935 (1977), *rev'd on other grounds*, 74 Ill. 2d 1 (1978) (prosecutor's repeated references to excluded clothing despite objections by defense counsel being sustained went "far beyond the usual legitimate inferences from facts proved in the trial" and denied the defendant a fair trial).

Even if the State could present a bare-thread claim that the comments were based on reasonable inferences from the evidence, which I conclude the State does not argue, the State was well aware of the precise statements of the defendant that were suppressed. I submit that prior to the State's rebuttal argument, it should have sought a ruling of the propriety of its intended use of nearly identical statements that were suppressed. The State did not. The State was bound by the suppression order and absent a ruling by the trial court that nearly identical statements were admissible on other grounds, we can only take a negative inference from the State's use of suppressed statements. Justice Wolfson is correct; the prosecutor "apparently was concerned about the paucity of secret confinement proof. During rebuttal argument the prosecutor reached into the defendant's previously suppressed statement to add two facts [that were not in evidence]." 392 Ill. App. 3d at 327. See *People v. Crossno*, 93 Ill. App. 3d 808, 822-23, 417 N.E.2d 827 (1981) (prosecutor's "reconstruction" of the testimony of witnesses, including a witness's testimony offered solely to impeach the defendant's testimony but used "to demonstrate that defendant had the requisite state of mind to commit murder and aggravated battery," constituted plain error).

Nor were the improperly added facts in the State's rebuttal argument remedied by the trial court's action. After the error was brought to the attention of the trial court, the judge gave the assistant State's Attorney an opportunity to address the jury once more. The assistant State's Attorney did not take back her improper comments based on the defendant's suppressed statements in her supplemental rebuttal argument. In response to further objections by the defense, the trial judge concluded that an instruction to the jury to disregard comments not based on the evidence was adequate to remedy any remaining error.

I find the remedy invoked by the trial judge did nothing to address the error. On the one hand, the trial judge concluded that a supplemental rebuttal argument by the assistant State's Attorney was warranted. On the other hand, according to the State's brief, the supplemental rebuttal argument "gave the ASA the opportunity to clarify the comments without highlighting to the jury what they may have been." How could the jury understand the reason for the supplemental rebuttal argument without being told the reason for the supplemental argument? The State offers no answer. See *Crossno*, 93 Ill. App. 3d at 824 (no excuse for State "misinforming the jury" during its rebuttal argument "when it cannot be challenged by the defense, except by way of an interjected objection").

I submit more was required of the trial judge. He should have identified and struck the offending comments from the record, point-

ing out to the jury that no evidence supported those comments, and instructed the jury accordingly. See *Nickon v. City of Princeton*, 376 Ill. App. 3d 1095, 1104, 877 N.E.2d 776 (2007) (judge's instruction to the jury to disregard portion of witnesses testimony that violated motion *in limine* cured any prejudice that may have occurred). It will never be known whether that would have cured the error; I am certain that the step the trial court took did not. See *People v. McCarroll*, 168 Ill. App. 3d 1020, 1026, 523 N.E.2d 150 (1988) (defendant deprived of a fair trial where prosecutor, knowing that the jury would not be instructed on accident in intentional murder case, argued that "if the judge did not tell them accident was a defense, it was not one").

Given that the State did not address the error in its supplemental rebuttal argument to the jury, an opportunity given to the State only because it committed error in its initial rebuttal argument, the trial judge should have directed the jury to disregard the precise statements attributed to the defendant that were nowhere to be found in the evidence presented to the jury. I submit that anything short of that left the error unaddressed, to the prejudice of the defendant as to the charge of aggravated kidnapping and as an affront to the final order of the trial court suppressing the defendant's statements obtained in violation of her *Miranda* rights.

JUSTICE ROBERT E. GORDON, dissenting:

I respectfully dissent.

Justice Wolfson's majority decision is well written but its reasoning ignores existing case law. I agree with the majority that the case must be decided on the meaning and interpretation of the words in the statute "secretly confines another." 720 ILCS 5/10—1(a)(1) (West 2006). In *People v. Mulcahey*, 72 Ill. 2d 282, 285 (1978), our Illinois Supreme Court found that the wife of a bank president, who informed her husband that she was being held hostage for ransom, was secretly confined when she was taped to a chair in her own home and when her husband did not know where she was being held.

Our supreme court stated:

" 'Secret' has been variously defined as: 'Concealed; hidden; not made public; particularly, in law, kept from the knowledge or notice of persons liable to be affected by the act, transaction, deed, or other thing spoken of.' (Black's Law Dictionary 1519 (4th ed. 1951).) *** [S]ecret confinement contemplated by the statute may be shown by proof of the secrecy of both the confinement and place of confinement, or of either. The victim in this case was 'secretly confined' as effectively in her own home as if defendant had asported her to some remote isolated place of confinement. We hold

that defendant secretly confined Mrs. Luttrell within the meaning of the statute." *Mulcahey*, 72 Ill. 2d at 285.

I find this case instructive because the definition of "secret" includes "kept from the knowledge or notice of persons liable to be affected by the act" and in the *Mulcahey* case, the husband did not know where his wife was being held.

Defendant argues, and the majority agrees, that the defendant did not secretly confine the baby, because the baby was never removed from the view of the public. I agree that the defendant never removed the baby from public view, and the public could easily recognize that she carried a baby. However, defendant's argument fails to address the second half of the accepted definition of secret confinement: that defendant kept the baby " 'from the knowledge or notice of persons liable to be affected by the act.' " *Mulcahey*, 72 Ill. 2d at 285, quoting Black's Law Dictionary 1519 (4th ed. 1951). In other words, the taking of the baby without parental permission can be concealment. "Confinement of a child under the age of 13 years is against his will within the meaning of this Section if such confinement is without the consent of his parent or legal guardian." 720 ILCS 5/10—1(b) (West 2006).

Although reviewing courts have historically defined "confinement" as being within an identifiable place such as a house or a car (see *People v. Sykes*, 161 Ill. App. 3d 623, 628 (1987)), more recently, this court has expanded the traditional definition of confinement (see *People v. Turner*, 282 Ill. App. 3d 770, 780 (1996) (secret confinement where victim was dragged to a viaduct late at night in an area with limited traffic); *People v. George*, 326 Ill. App. 3d 1096 (2002) (secret confinement where victim, despite being in the public view at various points during confinement, was prevented from escaping because the defendant threatened him)).

I find *People v. George*, 326 Ill. App. 3d 1096 (2002), and *People v. Goodwin*, 381 Ill. App. 3d 927 (2008), instructive.

In *George*, the defendant approached the 12-year-old victim and told him he was a police officer. The defendant, over a four-day period, coerced the victim into believing that defendant was a police officer and, later, his adopted father. Despite being present in public together at various points, the victim did not attempt to escape because the defendant had threatened and coerced him. The defendant argued that the State failed to prove defendant secretly confined the victim, in part because they had been seen in public on several occasions. This court, in affirming the defendant's conviction, found that the defendant had kept the victim's mother, a "person affected" by defendant's act, unaware of the victim's whereabouts the entire time. *George*, 326 Ill. App. 3d at 1101. In the case at bar, the defendant kept

the confinement secret by not letting anyone know she had the baby without the parents' permission. Furthermore, when the defendant was approached by a curious security guard, she attempted to bribe the security guard and attempted to flee with the baby.

Similarly, in *Goodwin*, the defendant, while attempting to elude police officers, stole a minivan with an 11-month-old child buckled in a child seat in the back of the van. The area where the child sat had tinted windows. The child's father chased the defendant and yelled for him to stop. The defendant traveled at speeds nearing 100 miles an hour, and he temporarily escaped from the father and the police. *Goodwin*, 381 Ill. App. 3d at 930-31. Shortly thereafter, the father and the police caught up with the defendant and safely recovered the child. The reviewing court affirmed the conviction for aggravated kidnapping, finding that even if the child were visible through the window, her presence would not arouse suspicion because there was no indication to the public that she was in the van without her parent's permission. *Goodwin*, 381 Ill. App. 3d at 936. Similarly, in the case at bar, the defendant walked along with the baby as if it were her own baby, which would not arouse suspicion, thereby keeping hidden from the public the fact that the baby was being confined, as defined by section 10—1(b) of the Criminal Code of 1961 (720 ILCS 5/10—1(b) (West 2006)).

In the case at bar, the defendant admits that she took the baby from Joel. Without Joel's knowledge, defendant wrapped her up in a pink and white towel that she had purchased that morning. Joel and Mirabel did not know where defendant had taken their baby. Although the public could easily view that the defendant carried a baby, similar to *Goodwin*, her presence on the street carrying a child wrapped in a towel "would not arouse suspicion" because there is no indication to the public that defendant carried the child without the parents' permission. *Goodwin*, 381 Ill. App. 3d at 936. I believe that defendant kept Mirabel, a "person affected" by defendant's act, unaware of her baby's whereabouts. *George*, 326 Ill. App. 3d at 1101. Accordingly, a rational jury could find that the State presented sufficient evidence that defendant secretly confined the baby.

In support of her argument, defendant relies upon *People v. Trotter*, 371 Ill. App. 3d 869 (2007), *overruled by People v. Harrison*, 226 Ill. 2d 427 (2007), and *People v. Lamkey*, 240 Ill. App. 3d 435 (1992). I find both cases distinguishable.

Initially, I must note that our supreme court overruled *Trotter* in *Harrison* on grounds related to the *Trotter* defendant's insanity plea. To the extent that the appellate court's decision in *Trotter* remains good law, it is distinguishable. The *Trotter* defendant took a 13-month-

old baby from an auto, crossed the street, and boarded a train with the child. While on the train, she told several riders that the child did not belong to her. Later, the defendant walked into a restroom at a gas station; the store clerk and a police officer both knew that she was in the restroom with a child. This court reversed the trial court, in part, because the defendant never removed the victim from the public view; was in "constant contact with other people"; and made no effort to secretly confine the child, going so far as to tell strangers that the child was not hers. *Trotter*, 371 Ill. App. 3d at 877. We are not presented with such a situation here, where it was reasonable for the jury to infer, based on the evidence, that defendant sought to pass the baby off as her own child to the public. Although she spent the morning talking with Mirabel, once she took the baby, she left the waiting room and did not have contact with another person until Hopkins stopped her for questioning. She attempted to bribe him and also sought to escape in an elevator. It is clear from the facts in the case at bar that defendant intended to, and did, for a brief period of time, prevent Mirabel and Joel from knowing their baby's whereabouts.

In *Lamkey*, this court found that the State failed to prove secret confinement where the defendant restrained a sexual assault victim in a glass vestibule only feet away from a major avenue, and the victim could see people walking past. In this vestibule, the defendant assaulted the victim, but did not attempt to move her to a more secluded area. Again, we are presented with a different situation than the instant case. The *Lamkey* defendant was not attempting, in any way, to prevent others from seeing his actions. *Lamkey*, 240 Ill. App. 3d at 439. In the case at bar, the record demonstrates that a jury could find defendant sought to have the public believe that the baby was her own child.

The facts are clear that the defendant, although she did not entirely remove the baby from the public view, did prevent the baby's parents, Joel and Mirabel, from knowing her whereabouts and sought to pass the baby off as her own child to the public, thereby giving no indication to the public that the baby was not permitted to be with her. Accordingly, I believe that a rational jury could have found that the State proved secret confinement beyond a reasonable doubt.

Defendant next contends that the prosecutor prejudiced her during the rebuttal argument by referring to suppressed evidence. Specifically, defendant argues that the prosecutor, by stating that defendant placed the baby in her coat, referred to her suppressed postarrest statement.

The concurring opinion agrees with the conclusion by Justice Wolfson, but finds the prosecutor's use of the suppressed statement borders

on prosecutorial misconduct to the prejudice of the defendant. I too am displeased with the comment made, but I also do not find the comments enough to provide defendant with a new trial.

A prosecutor is given wide latitude in closing arguments, although his or her comments must be based on the facts in evidence or upon reasonable inferences drawn therefrom. *People v. Page*, 156 Ill. 2d 258, 276 (1993). While a prosecutor's remarks may sometimes exceed the bounds of proper comments, the verdict must not be disturbed unless it can be said that the remarks resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different. *People v. Byron*, 164 Ill. 2d 279, 295 (1995).

A defendant bears a substantial burden to reverse a conviction based upon improper remarks during closing argument. *People v. Williams*, 332 Ill. App. 3d 254, 266 (2002). A prosecutor's improper remarks must be considered in the context of the closing arguments as a whole and will not be reversible error unless they are a material factor in the conviction or cause substantial prejudice to the accused, *i.e.*, a reasonable jury could have reached a different verdict if the improper comments had not been made. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007).

I find that, after considering the disputed comment in the entirety of the closing argument, defendant has failed to demonstrate substantial prejudice. See *People v. Meeks*, 382 Ill. App. 3d 81, 86 (2008). The prosecutor made the comment a single time, the jury was properly instructed to disregard any remarks that were not based in evidence, and defendant identifies no evidence to suggest that the comment was deliberate. See *People v. Siefke*, 195 Ill. App. 3d 135, 145 (1990) (finding that an isolated prosecutorial indiscretion, when not deliberately repeated and cured by an instruction to the jury, did not constitute reversible error). The trial court, based on defendant's objection, allowed the prosecutor the opportunity to clarify her argument. In her supplemental rebuttal, the prosecutor explained the State's theory of secret confinement; she explained that defendant wrapped the baby in the pink and white towel but made no mention of the jacket. The trial court then instructed the jury to disregard any part of the argument that was not based in the evidence. The trial court's instruction to the jury, combined with the prior admonishments and the curative efforts of the supplemental rebuttal, mitigated any of the potential prejudice from the prosecutor's statement. See *Meeks*, 382 Ill. App. 3d at 86.

In reaching my conclusion, I considered the conduct of the prosecutor in light of the cases defendant relies upon (*People v. Edwards*, 49 Ill. App. 3d 79 (1977); *People v. Gilmer*, 110 Ill. App. 2d 73 (1969)), to

support her argument. I find both cases distinguishable. In both cases, the prosecutor referred to suppressed evidence. In *Edwards*, the prosecutor made a second reference to such evidence after the court sustained defendant's objection to the first reference. This court determined the second reference was "deliberate" and the cumulative effect of the prosecutor's comments was highly prejudicial. *Edwards*, 49 Ill. App. 3d at 83. Similarly, in *Gilmer*, this court found the actions of the prosecutor deliberate and that there was a reasonable possibility that improperly introduced evidence contributed to the conviction. *Gilmer*, 110 Ill. App. 2d at 80. Here, we are not faced with the sort of deliberate prosecutorial misconduct that the *Gilmer* or *Edwards* court faced.

I cannot say that the prosecutor's one-time reference in the rebuttal argument to the suppressed evidence resulted in substantial prejudice to the defendant, such that absent that remark the verdict would have been different. *Byron*, 164 Ill. 2d at 295.