NO. 4-06-0354          Filed 4/21/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court |
| v. | ) | of Macon County |
| STEPHEN G. GOODWIN, | ) | No. 05CF486 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John K. Greanias, |
| | ) | Judge Presiding |

_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

In February 2006, following a jury trial, the jury convicted defendant, Stephen G. Goodwin, of escape (720 ILCS 5/31-6(c) (West 2004)), unlawful possession of a converted vehicle (625 ILCS 5/4-103(a)(1) (West 2004)), burglary (720 ILCS 5/19-1(a) (West 2004)), aggravated kidnaping (720 ILCS 5/10-2(a)(2) (West 2004)), aggravated unlawful possession of a converted vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2004)), and aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.1(a)(4) (West 2004)). In June 2005, at a pretrial hearing on a motion to receive a new attorney, the trial court held defendant in direct criminal contempt for an outburst of profanity. The court sentenced defendant to 180 days in the Macon County jail.

In March 2006, the trial court sentenced defendant to concurrent prison terms of 7 years for escape, 3 years for

fleeing, 15 years for possession of a converted vehicle, and 30 years for aggravated kidnaping, all running consecutive to the sentence in another case.

Defendant appeals, arguing that (1) the trial court erred in making his contempt sentence consecutive to any future sentence which might be imposed; (2) his contempt sentence was excessive; and (3) the State failed to prove him guilty of kidnaping beyond a reasonable doubt. We affirm.

## I. BACKGROUND

In April 2005, the State charged defendant with escape (720 ILCS 5/31-6(c) (West 2004)), unlawful possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2004)), burglary (720 ILCS 5/19-1(a) (West 2004)), aggravated kidnaping (720 ILCS 5/10-2(a)(2) (West 2004)), aggravated unlawful failure to obey an order to stop (625 ILCS 5/4-103.2(a)(7)(a) (West 2004)), and aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.1(a)(4) (West 2004)). The unlawful-possession-of-a-stolen-vehicle charge was later amended to unlawful possession of a converted vehicle (625 ILCS 5/4-103(a)(1) (West 2004)), and the aggravated-unlawful-failure-to-obey-an-order-to-stop charge was amended to aggravated unlawful possession of a converted vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2004)).

As is relevant to this appeal on the aggravated kidnaping charge, the information alleged that on April 3, 2005,

defendant intentionally escaped from Decatur police officer Christopher Copeland and entered a Dodge Caravan with the intent to commit a theft.  The information further alleged defendant knowingly and secretly confined Carmen Howard, a child under the age of 13 years, and refused to stop when Decatur police officer Chad Shull signaled for him to do so.

On June 10, 2005, at a pretrial hearing, defendant interrupted the proceedings several times complaining about his attorney.  When the trial court refused to interrupt the discussion of other issues to address defendant's accusation that his attorney was "working with" the assistant State's Attorney, defendant said "[t]his mother-fucking court is crooked."  The court immediately found defendant in direct criminal contempt and orally sentenced him to 180 days in the Macon County jail, stating:

> "Mr. Goodwin, I find you are in direct crimi-
> nal contempt of court for swearing by audibly
> saying 'mother-fucker' in open court.  I
> sentence you to 180 days in the Macon County
> [j]ail for contempt which sentence will run
> consecutive to the sentence you are currently
> serving and any other sentence that is subse-
> quently imposed on you in the pending cases."

On June 20, 2005, defendant handed the trial court a

letter apologizing for his outburst.  That same day, defendant also verbally apologized to the court during a pretrial hearing on defendant's motion to proceed pro se.

On June 24, 2005, at a hearing on defendant's motion to dismiss count IV (aggravated kidnaping), the State asked the trial court to enter a written finding of direct criminal contempt.  The court responded that it would consider defendant's letter as an oral motion to modify the sentence and to vacate the finding of contempt.  The court stated:

"Again, Mr. Goodwin [(defendant)] *** you have filed a written apology to the [c]ourt which I have now received.  What I am going to do with respect to that is, I am going to take that as an oral motion to *** modify the sentence and to vacate the finding of contempt and I'm going to take that under advisement at this time until, basically, we get done with the case.  So, it will leave that--the possibility of me vacating all or part of the sentence and vacating the finding of contempt open so that it again that will be possible.  If I don't do that right now, then, once 30 days passes, I can't do that; so, I'm leaving that possibility open right

- 4 -

now *** and I will prepare a written order, and I'll provide [a] copy of that to both [defendant] and you, [defense counsel], once I've prepared and filed that written order."

On June 27, 2004, the trial court entered a written order finding defendant in direct criminal contempt and sentencing him to 180 days in the Macon County jail, to be served "consecutive to [d]efendant's other sentence previously imposed." Although the "Findings" section of the written order referred to the oral sentence given on June 10 and the corresponding docket entry where the written order recited that the court had "sentenced [d]efendant to 180 days in the Macon County [j]ail to run consecutive to the sentence previously imposed in another case and any other sentences imposed in the future for criminal offenses charged in this case," the sentence contained in the decretal portion of the written order corrected what the court said orally on June 10, in its docket entry, and in the findings of the written order.

The "previously imposed" sentence referred to was for theft over $300. On March 8, 2005, the Macon county circuit court sentenced defendant to four years in the Illinois Department of Corrections (DOC) for that charge. Defendant asked to be released on a $100,000 recognizance bond for a week before he had to report to serve his sentence. He was given a three-day stay

and ordered to report for his sentence on March 11, 2005. Defendant did not report and a warrant was issued for his arrest.

On February 6, 2006, the jury trial commenced on five charges (the State was granted a motion just before trial to nol-pros the burglary charge). Kevin Howard testified, as is relevant to this appeal, that on April 3, 2005, he and his 11-month-old daughter, Carmen, were sitting in a minivan belonging to Kevin and his wife Dorian, as it was idling in the driveway at 2822 Cardinal Drive. Kevin was in the driver's seat and Carmen was in a child's car seat, facing forward, belted to the seat directly behind the driver's seat. The windows behind the front doors of the van were tinted.

Kevin saw a man, whom he identified as defendant, being chased by a police officer. Defendant ran up along side the van, crossed in front of it, then ran around the house. Kevin got out to see what was happening. He left his door open. He headed back to the van, but saw defendant again. This time, defendant jumped into the driver's seat of the minivan, shut the door, and locked the doors. The evidence at trial conflicted on whether the driver's window of the van was open and whether, as defendant drove off in the van, Kevin yelled that there was a child in the car or "stop, get out of my car."

The evidence at trial indicated that defendant drove away, accelerating quickly, with the child still strapped in her

car seat in the car.  Kevin and Dorian chased on foot briefly, with Dorian screaming that there was a baby in the car.  Decatur police officers Nathan Binkley and Christopher Copeland, who were attempting to take defendant in on the outstanding warrant, ran back to their squad car.  Officer Chad Shull, who was also on the scene, gave chase in his patrol car, and Kevin and his sister-in-law got in another vehicle and also chased defendant.  After driving a short way, Kevin and his sister-in-law asked some passersby whether they had seen the van.  The passersby said they had seen the van and pointed Kevin and his sister-in-law in the direction they had seen it travel.  Kevin spotted the van, which had no police cars behind it.  Kevin and his sister-in-law turned around and followed the van, but they then lost sight of it.

Officers Nathan Binkley and Christopher Copeland also attempted to locate the van.  They did find it, following it briefly before their commander called off the pursuit.  Officers Chad Shull and Chad Larner pursued the defendant in the minivan for a longer time.  During this time, defendant drove at speeds of 75 to nearly 100 miles per hour, ran red lights, crossed a median, and drove in oncoming traffic lanes to drive around stopped traffic.  The pursuit was terminated by Sargent Squires (first name not in evidence).  Officer Chad Shull and Chad Larner slowed and lost sight of the van, but they continued driving.

Shortly after that, Officer Chad Shull saw people

pointing toward an apartment complex at the next intersection. Officer Chad Shull saw the van on the curb at that intersection. Officers Chad Shull and Chad Larner arrived at the van about the same time and found that Kevin had arrived before any police officers. Kevin had not seen the van since the first time he lost sight of it. Officer Chad Larner estimated that the van was out of his sight for about two minutes. The record indicates that Officer Chad Shull also lost sight of the van. Immediately after he arrived, Kevin removed Carmen from the van. Carmen was crying, and both parents noted that her face was red and splotchy, which is how it looked when she has been crying.

At trial, defendant testified in his own defense. He admitted that he knew there was a warrant for his arrest, and he did not want to be taken in on it. Defendant testified he was going to hide in the van but decided to drive away when one of the officers tried to spray him with mace. He said the windows were closed, and he heard a man yell at him to get out of the van, but did not hear anything about a child in the van. He said he did not look behind him, music was playing in the van, and he never heard Carmen. He also said that he spent a considerable amount of the time he was running from police talking to his girlfriend on Kevin's cell phone.

The jury found defendant guilty on all charges. On March 22, 2006, the trial court vacated the (nonaggravated)

- 8 -

possession-of-a-converted-vehicle conviction, and sentenced defendant to concurrent sentences of 7 years' imprisonment for escape, 30 years' imprisonment for kidnaping, 15 years' imprisonment for aggravated possession of a converted vehicle, and 3 years' imprisonment for eluding, all running consecutive to defendant's March 8, 2005, sentence for theft over $300 in Macon County case No. 04-CF-752.

This appeal followed.

## II. ANALYSIS

Defendant raises three issues on appeal. Defendant argues (1) the trial court erred in making his contempt sentence consecutive to any future sentence the court might impose, (2) his contempt sentence was excessive, and (3) the State failed to prove him guilty of kidnaping beyond a reasonable doubt.

### A. This Court Lacks Jurisdiction To Review the Trial Court's Order on Timing and Duration of Defendant's Contempt Sentence

Defendant argues the trial court erred by ordering his contempt sentence run consecutive to any future sentence the court might impose in the pending case. The State concedes it would have been improper for the court to order the contempt sentence run consecutive to any future sentence but argues (1) defendant forfeited any error regarding the finding of contempt by failing to obtain a final ruling from the court; and (2) in the alternative, this court lacks jurisdiction to address the alleged errors because defendant did not appeal the order within

30 days.  This court will address the State's arguments first.

### 1. The June 27, 2005, Order Was Final

The State claims that the trial court never ruled on defendant's motion to modify or vacate.  The State notes that the court did enter a written order of contempt on June 27, 2005.  The State argues, however, that the order was not a final judgment of contempt because the court stated on June 24, 2005, that it was taking the motion under advisement until completion of the case.  We disagree.

Although the trial court stated that it would take the motion under advisement until completion of the case, the court clearly reconsidered that statement when it entered the June 27, 2005, order.

At the same time the trial judge said he would decide the motion at the end of the case, he said that he knew the decision on the motion would have to be made quickly.  The judge said that he would have to decide within 30 days, if at all.  At the same hearing, this case was set for pretrial on September 6, 2005, and trial was set for the term beginning September 19, 2005.  Because the case was clearly not going to trial within 30 days, and the judge was clearly cognizant of the limited time he had to reconsider, the judge could not have meant after the trial when he said at "the end of the case."  The judge then said that he would keep the issue open for the moment but would issue a

written order.  Placed in context, when the judge said "the end of the case," he apparently meant that after the pretrial hearing he would consider modifying or vacating the finding of contempt, and he then would issue a written order.  He issued the final order three days later with no modification.

## 2. This Court Lacks Jurisdiction To Consider Defendant's Appeal of His Contempt Sentence Because Defendant Failed To Timely Appeal

The State also argues that this court lacks jurisdiction to consider the issues of timing and excessiveness of defendant's contempt sentence because defendant did not appeal within 30 days of the entry of the final order of contempt.

"An order finding a person or entity in contempt of court which imposes a monetary or other penalty" is final for purposes of appeal.  155 Ill. 2d R. 304(b)(5).  An appeal must be filed within 30 days of the entry of the order appealed.  188 Ill. 2d R. 606(b).

Because defendant did not file an appeal within 30 days of the order entered by the trial court on June 27, 2005, this court lacks jurisdiction to consider the issues defendant raises with regard to timing and excessiveness his contempt sentence.

## B. Defendant Was Not Awarded Sentence Credit in Excess of What He Was Entitled

The State also argues that the trial court awarded defendant sentence credit in excess of what he was entitled. In their briefs, neither party discusses the appropriateness of the

- 11 -

State raising the issue. The State did not cross-appeal. The State raised this issue in its appellee brief. The State, however, is in the position of an appellant by raising this issue and is thus restricted by Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)), which lists the few permissible grounds for an appeal by the State. People v. Kent, 40 Ill. App. 3d 256, 265-66, 350 N.E.2d 890, 898 (1976).

Challenging the calculation of credit for time served is not among the list of bases for a State's appeal. 210 Ill. 2d R. 604(a)(1). If the State had filed a cross-appeal, the cross-appeal would fail on this basis.

The State asserts, however, that the trial court's determination of sentencing credit is a void judgment, which may be attacked at any time. City of Chicago v. Roman, 184 Ill. 2d 504, 510, 705 N.E.2d 81, 85 (1998). The State argues the result of giving what the State believes is too much credit for time served is that the court exceeded its authority by giving a lesser sentence than the statute imposed. Roman, 184 Ill. 2d at 510, 705 N.E.2d at 85.

However, the trial court here sentenced defendant to six months' jail time consecutive to the four-year sentence he was then serving for theft. Consecutive sentences are discrete and individual; thus, the contempt sentence will begin once the theft sentence is complete. People v. Pack, 224 Ill. 2d 144,

148, 862 N.E.2d 938, 941 (2007).  As the defendant points out, this just means he has not yet started serving the contempt sentence.  Although defendant was sentenced to six months in the county jail for contempt, a docket entry dated June 24, 2005, indicated the trial court transferred defendant to DOC to serve time on the theft charge.  Defendant spent the entire time that the State presumes he was serving his contempt sentence in the custody of DOC with the exception of a few days in August 2005, when he was awaiting a hearing on several motions he had filed in this case.  This corroborates defendant's contention that he has not yet served the contempt sentence.

### C. State Proved Defendant Guilty of Aggravated Kidnaping Beyond a Reasonable Doubt

Defendant last argues the State did not prove the aggravated-kidnaping charge beyond a reasonable doubt.  Defendant claims that the State failed to prove "secret confinement" because everyone knew the baby was in the van and the baby could be observed by a person looking inside the van's window.

Generally, where a defendant challenges the sufficiency of the evidence, the test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  People v. Ward, 215 Ill. 2d 317, 322, 830 N.E.2d 556, 559 (2005).  It is not the function of the appellate court to retry the defendant.  People v. Slinkard,

- 13 -

362 Ill. App. 3d 855, 857, 841 N.E.2d 1, 3 (2005).

However, when the facts are not in dispute, and the reviewing court is interpreting whether those facts meet the definition of a statutory term, the question is one of law. People v. Lamborn, 185 Ill. 2d 585, 590, 708 N.E.2d 350, 354 (1999); People v. Smith, 191 Ill. 2d 408, 411, 732 N.E.2d 513, 514 (2000). Here, the issue is whether the undisputed facts of the case constitute "secret confinement" under section 10-1(a) of the Criminal Code of 1961 (720 ILCS 5/10-1(a) (West 2004)). The question is one of law and this court will review the finding of "secret confinement" de novo. Lamborn, 185 Ill. 2d at 590, 708 N.E.2d at 354; Smith, 191 Ill. 2d at 411, 732 N.E.2d at 514

A kidnaping occurs when a person knowingly and secretly confines another person against his will. 720 ILCS 5/10-1(a)(1) (West 2004). Confinement of a child under the age of 13 is considered "against his will" if done without the consent of the parents or legal guardian, and, where the victim is under 13, the crime also become aggravated kidnaping. 720 ILCS 5/10-1(b), 10-2(a)(2) (West 2004).

The precedent in Illinois is clear and consistent: one person holding another in a car on the public highways constitutes secret confinement. People v. Bishop, 1 Ill. 2d 60, 64, 114 N.E.2d 566, 568 (1953); People v. Hamil , 20 Ill. App. 3d 901, 908, 314 N.E.2d 251, 256 (1974). In Bishop, 1 Ill. 2d at

- 14 -

64, 114 N.E.2d at 568, the court rejected the argument that there can be no secret confinement where the victim was forcibly confined in a car that was driven around for four hours. In Hamil, 20 Ill. App. 3d at 908, 314 N.E.2d at 256, the element of secret confinement was established where the defendant confined the victim in the car while driving down several alleys, then stopped where the victim could not open the door. Defendant argues the police and the Howards lost visual contact with the van for only a short time. However, there is no minimum time of confinement set forth in the kidnaping statute.

In this case, the facts demonstrated that defendant was driving in a van at a high rate of speed and attempting to elude capture. He had Carmen in the van and managed, for a time, to succeed in getting away from her family and the police.

Defendant argues that Carmen was not secretly confined under the analysis in People v. Pasch, 152 Ill. 2d 133, 187-88, 604 N.E.2d 294, 316-17 (1992). In Pasch, the supreme court found the defendant not proved guilty of aggravated kidnaping beyond a reasonable doubt where the State failed to prove secret confinement in a hostage standoff where the defendant never attempted to keep the victim's location (in the victim's apartment) a secret and the victim's sister was aware of the victim's location at all times. Defendant argues that Carmen was not secretly confined because her parents and the police knew she

was in the minivan from the time defendant drove it away until Kevin found the van and removed Carmen. Pasch is distinguishable because defendant was driving a van with Carmen in it, attempting to elude detection, not holding her in a fixed location where her presence was widely known

Defendant also argues that the child was visible through the window of the van, which was operated on public roads, so Carmen was never removed from the public awareness. In People v. Trotter, 371 Ill. App. 3d 869, 876-77, 864 N.E.2d 281, 287 (2007), overruled on other grounds by People v. Harrison, 226 Ill. 2d 427, 441, 877 N.E.2d 432, 439 (2007), the appellate court found the defendant was not proved guilty beyond a reasonable doubt where the defendant took a child without the parents' consent, boarded a light-rail train, rode it for a while, disembarked, spoke with a suspicious police officer, walked to a gas station while the police officer kept her in sight, and went to the bathroom where she was ultimately arrested. The court in Trotter found that secret confinement was not proved because the victim was never removed from the public awareness. Trotter, 371 Ill. App. 3d at 877, 864 N.E.2d at 287.

Again, however, Carmen was not in clear view of the public, as she would be on a train or bus, or had she been taken through a gas station in view of an employee and had briefly been taken to a public restroom. She was strapped in the child seat

- 16 -

of a van with tinted windows. Even if Carmen were visible in the van, her presence there would not arouse suspicion. There would be no indication to the public that her being in the van was without her parents' permission.

Finally, defendant asserts that this situation is comparable to People v. Lamkey, 240 Ill. App. 3d 435, 439, 608 N.E.2d 406, 409 (1992), because, defendant asserts, Carmen was visible through the van window. The court found the State failed to prove secret confinement in Lamkey, where the victim was held and sexually assaulted behind a glass door a couple steps off of a busy Chicago street. Lamkey, 240 Ill. App. 3d at 439, 608 N.E.2d at 409. Confinement, though, is much more "secret" when it involves a very small child in a child seat in a moving vehicle than it is when a sexual assault is being perpetrated behind a glass door clearly visible from a busy street.

Clearly, defendant had Carmen secretly confined within the meaning of the statute, and defendant was therefore correctly found guilty of aggravated kidnaping beyond a reasonable doubt.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its statutory assessment of $50 against defendant as costs of this appeal.

Affirmed.

McCULLOUGH and STEIGMANN, JJ., concur.