THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RHONDA L. HOWELL, Defendant-Appellant.

Fourth District    No. 4—08—0243

Opinion filed February 18, 2009.

Michael J. Pelletier, Gary R. Peterson, and Michael H. Vonnahmen, all of State Appellate Defender's Office, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Patrick Delfino, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE APPLETON delivered the opinion of the court:

After a bench trial, the trial court found defendant, Rhonda L. Howell, guilty of escape and unlawful possession of drug paraphernalia and sentenced her to four years in prison. In this direct appeal, defendant claims the State failed to prove her guilty of escape beyond a reasonable doubt. She also claims the court erred in failing to conduct a balancing test prior to admitting into evidence, for impeachment purposes, her prior convictions. For the following reasons, we affirm.

## I. BACKGROUND

On January 3, 2007, the State charged defendant with escape (720 ILCS 5/31—6(a) (West 2006)) (count I) and aggravated battery (720 ILCS 5/12—4(b)(6) (West 2006)) (count II) for striking and fleeing from the custody of Terry Park, a Macon County court-security officer, on December 21, 2006. The State also charged defendant with unlawful possession of drug paraphernalia (720 ILCS 600/3.5 (West 2006)) (count III) for having in her possession a brass-colored pipe with a bowl. On December 21, 2006, the Honorable Scott Diamond sentenced defendant to three years' imprisonment for burglary (Macon County

case No. 06—CF—1463). After sentencing, Park took defendant into custody inside the courtroom and escorted her to the elevators. Defendant struck Park in the arm with her left elbow and ran down the stairs. Park radioed for assistance and Macon County court officers Larry Gregg and Lisa Friis stopped defendant on the third floor. Park regained custody of defendant and conducted a search of her person. In her purse, Park found a brass-colored pipe with burnt residue of marijuana in the bowl.

At defendant's arraignment, the trial court appointed the public defender to represent her. On February 7, 2007, defendant pleaded guilty to aggravated battery, and the court sentenced her to two years' imprisonment with the sentence to run consecutively to her sentence in Macon County case No. 06—CF—1463. In exchange for defendant's guilty plea, the State agreed to dismiss the charges of escape (count I) and unlawful possession of drug paraphernalia (count III). On March 5, 2007, defendant filed a *pro se* motion to withdraw her guilty plea, alleging she "had inadequate representation by counsel" and "was not advised as to the rights [she] was surrendering in pleading guilty."

On March 19, 2007, the trial court again appointed the public defender to represent defendant. On June 4, 2007, the court, without objection, granted defendant's motion to withdraw her plea and vacated the judgment of conviction entered on February 2, 2007.

On December 19, 2007, the trial court conducted defendant's bench trial on the three charged offenses. Terry Park testified that he was employed as a court-security officer in Macon County. He said court-security officers are sworn law-enforcement officers, who are armed, have powers of arrest, and are assigned strictly to the courthouse. He testified that on December 21, 2006, at approximately 10:40 a.m., he was assigned to Judge Diamond's courtroom on the sixth floor. Judge Diamond had just sentenced defendant to three years' imprisonment in case No. 06—CF—1463. After sentencing, Park said he escorted defendant, who was not handcuffed, out of the courtroom, intending to take her to the booking area and to jail. Defendant asked Park if she could give her purse to her mother. Park said she could but, he did not see any other person around.

Park testified that he walked with his hand on defendant's elbow. As they approached the elevators, defendant "shoved her arm back and took off walking faster." Park said he advised defendant to stop but, "[s]he kept right on going." Park again warned her to stop but, "[s]he took off down the steps." He radioed to other officers for assistance and gave a physical description of defendant, advising that she was "running from the sixth floor[,] going down the stairwell." Officers Larry Gregg and Lisa Friis caught defendant on the third

floor and placed her in handcuffs. Park caught up to defendant and took her downstairs, where she was booked and searched. During the search, officers found what Park described as a "crack pipe" on her person. Defendant interrupted Park's testimony and said, "That's a weed pipe." Park testified that he was not injured by defendant's push, but was "more insulted *** because [he] was going to let her to do what she wanted to do."

On cross-examination, Park testified that he did not believe there was a policy to place a defendant in handcuffs after sentencing. On redirect, Park testified that on the day of the incident, he was wearing his law-enforcement uniform.

Officer Lisa Friis testified that she was employed by the Macon County sheriff's department as a court-security officer. On the day of the incident, she was in a second-floor courtroom when she heard Park's radio call. She left the courtroom and took the stairs toward the sixth floor. On the third floor, she encountered defendant, who was "running vigorously down the stairs." Friis said she and Officer Gregg blocked defendant's path. Park met them on the third floor and placed defendant in handcuffs. The officers escorted defendant to the court-security office on the first floor. Friis was present during the search and believed it was Park who had found the pipe in defendant's purse.

On cross-examination, Friis testified that she could hear defendant approaching in the stairwell. Friis said defendant was wearing high heels, but she apparently had no problem moving down the stairs. Friis said once she and Gregg blocked defendant's path, defendant did not attempt to evade them.

Officer Larry Gregg testified that he was a "court[-]division officer with the Macon County Sheriff." He said, on the day of the incident, he was in courtroom 2A when he heard Park's call for assistance. Gregg said Park's call included a physical description of defendant. He said he met Friis, who was in courtroom 2B, in the hallway and they both started up the stairs. They met defendant on the third floor. Gregg said defendant stepped aside but both officers grabbed her arms. Park arrived and took defendant into custody. Gregg said he returned to his courtroom.

Mark Paiva testified that he is employed by the Illinois State Police crime lab in Springfield. He tested the pipe found on defendant's person and discovered cannabis and cocaine residue.

The State introduced, as an exhibit, a certified copy of the court docket in Macon County case No. 06—CF—1463—the case for which defendant was sentenced immediately prior to the incident at issue. The State rested.

Defendant testified on her own behalf. (We note that the first page

of defendant's testimony is missing from the transcript in the record.) Defendant testified that she was "kind of shocked" that Judge Diamond had sentenced her to prison because she was expecting a sentence of "intense probation." She said after sentencing, Park led her through the courtroom door. Defendant said she asked Park if she could give her purse to her mother, but she did not tell him where her mother was. She said she walked down the hallway by herself while Park remained outside the courtroom. She said she went down the stairs. She said she "can't tell what [her] intentions were because [she did]n't know." She said at the third floor, Gregg and Friis stopped her and placed her in handcuffs. She said when she was stopped she "put [her] hands behind [her] back." The three waited in the stairwell for Park.

Defendant said her mother was with defendant's son in a courtroom on the second floor in traffic court. She said Park gave her permission to take her things to her mother. She said she "never once touched Mr. Park." She said she never pushed or resisted Officers Friis or Gregg and her intention was not to escape.

On cross-examination, defendant testified that she just walked away from Park and down the stairs, in no particular hurry. She said Park never advised her to stop, and she denied elbowing or touching Park. Defendant rested.

On rebuttal, the State introduced, for impeachment purposes, six records of convictions for defendant: (1) No. 97—CF—1662, retail theft; (2) No. 97—CF—798, retail theft; (3) No. 03—CF—513, forgery; (4) No. 04—CF—853, resisting a peace officer (defendant pleaded guilty to this offense, a Class A misdemeanor, in exchange for the State's dismissal of the felony charge of violation of an order of protection); (5) No. 05—CF—186, violation of an order of protection; and (6) No. 06—CF—1463, burglary. Defendant's counsel objected, stating: "They are of limited use or relevance in this proceeding." The court overruled defendant's objection and admitted the records into evidence. The court stated: "If I may supplement the record, this is not a jury trial. So, I do not believe the court needs to go through the test on *People v. Montgomery*[, 47 Ill. 2d 510, 268 N.E.2d 695 (1971)]. I will determine the weight to be given to this for the sole purposes of impeachment."

After considering the evidence and arguments of counsel, the trial court found defendant guilty of escape and possession of drug paraphernalia but not guilty of aggravated battery. On February 4, 2008, the court sentenced defendant to four years' imprisonment for escape. On her drug-paraphernalia conviction, the court imposed a fine of $750 plus costs. Defendant did not file any posttrial motions. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant claims the State failed to prove her guilty of escape because the evidence did not demonstrate that she escaped from a penal institution or from an employee of a penal institution as set forth in section 31—6(a) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/31—6(a) (West 2006)). She claims that because she was neither in jail nor in the custody of a jail employee, she could not be convicted of escape.

The information filed by the State charged defendant with a violation of section 31—6(a) of the Criminal Code (720 ILCS 5/31—6(a) (West 2006)), alleging that "defendant, having been convicted of the felony offense of [b]urglary, in violation of 720 ILCS 5/19—1 [(West 2006)], intentionally escaped from the custody of Terry Park, a Macon County, Illinois[,] court[-]security officer." In its response to this appeal, the State claims the evidence at trial established the elements of section 31—6(c), not section 31—6(a), and that the allegation of a violation of subsection (a) was "a formal defect, which did not affect the validity of defendant's conviction."

Section 31—6(a) of the Criminal Code (720 ILCS 5/31—6(a) (West 2006)) provides that "[a] person convicted of a felony or charged with the commission of a felony who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony." Whereas, section 31—6(c) of the Criminal Code (720 ILCS 5/31—6(c) (West 2006)) provides that "[a] person in the lawful custody of a peace officer for the *alleged* commission of a felony offense and who intentionally escapes from custody commits a Class 2 felony." (Emphasis added.)

Contrary to its argument on appeal, we find the State did not cite the wrong statutory section in the information but intentionally alleged a violation of section 31—6(a) and sufficiently proved that violation at trial. Section 31—6(c) governs a situation when a defendant is taken into custody upon the commission of a crime. In such a case, the defendant has not been formally charged with a crime but has been placed in police custody and thereafter escapes from that custody. See *People v. Goodwin*, 381 Ill. App. 3d 927, 930-31, 888 N.E.2d 140, 143-44 (2008) (the defendant convicted of escape under section 31—6(c) after he fled from police custody as they tried to arrest him on an outstanding warrant). Hence, the statute includes the language "for the *alleged* commission of a felony."

On the other hand, section 31—6(a) governs a situation as the one presented in the case *sub judice*—where defendant had been convicted

of a felony, was in the custody of a penal-institution employee, and escaped from that custody. 720 ILCS 5/31—6(a) (West 2006). Officer Terry Park, and every other court-security officer, is an employee of the county sheriff's department. The county sheriff is the custodian of the county jail; therefore, it necessarily follows that the sheriff's deputies are "employees of a penal institution" within the meaning of section 31—6(a) of the Criminal Code (720 ILCS 5/31—6(a) (West 2006)).

The following statutory sections and legal authorities support our conclusion. First, section 2—14 of the Criminal Code (720 ILCS 5/2—14 (West 2006)) provides that a penal institution is "a penitentiary, state farm, reformatory, prison, jail, house of correction, or other institution for the incarceration or custody of persons under sentence for offenses or awaiting trial or sentence for offenses." Second, section 3—6017 of the Counties Code (55 ILCS 5/3—6017 (West 2006)) provides that the county sheriff "shall have the custody and care of the courthouse and jail of his or her county, except as is otherwise provided."

Third, section 3—6012.1 of the Counties Code (55 ILCS 5/3—6012.1 (West 2006)) defines a court-security officer as follows: "The sheriff of any county in Illinois with less than 3,000,000 inhabitants may hire court[-]security officers in such number as the county board shall from time to time deem necessary. *** The court[-]security officers shall be under the sole control of the sheriff of the county in which they are hired." And fourth, the Illinois Attorney General concluded in a 1996 advisory memorandum that only deputy sheriffs could be employed as courthouse-security personnel if those personnel were authorized to carry weapons and make arrests. 1996 Ill. Att'y Gen. Op. No. 96—17, at 1-2.

■ In sum, because Officer Park (as a court-security officer) was an employee of the Macon County sheriff and because the Macon County sheriff is the custodian of the Macon County jail, we find that Officer Park is, for the purposes of the escape statute, an employee of a penal institution within the meaning of subsection (a). 720 ILCS 5/31—6(a) (West 2006). We further find the evidence presented at trial sufficiently proved that defendant, who had been convicted of burglary, was in the custody of Officer Park and intentionally escaped from his custody. We affirm the trial court's judgment.

### B. *Montgomery* Balancing Test

■ Defendant next contends that the trial court erred in failing to conduct a balancing test before admitting defendant's prior convictions into evidence for impeachment purposes. There is no dispute that the court did not conduct a *Montgomery* balancing test, as the

court specifically stated: "If I may supplement the record, this is not a jury trial. So, I do not believe the court needs to go through the test on *People v. Montgomery*[, 47 Ill. 2d 510, 268 N.E.2d 695 (1971)]. I will determine the weight to be given to this for the sole purposes of impeachment."

"Of course, the rules of admissibility of evidence are the same whether a trial be had with or without a jury. [Citation.] However, when a trial court is the trier of fact a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion." *People v. Naylor*, 229 Ill. 2d 584, 603, 893 N.E.2d 653, 665 (2008). "As a matter of law, we must presume that the trial court considered defendant's prior conviction 'only with respect to the purpose for which it was competent.' " *Naylor*, 229 Ill. 2d at 603, 893 N.E.2d at 665, quoting *People v. Lacey*, 24 Ill. 2d 607, 611, 182 N.E.2d 730, 732 (1962). This was evident by the court's comments at defendant's trial. The court acknowledged the *Montgomery* balancing test and thereby recognized the potential for prejudice. We must assume the court considered defendant's prior convictions only for their proper purpose.

The State argues that defendant forfeited her argument because she did not raise the issue in a posttrial motion. In reply, defendant relies on the *Naylor* decision in arguing that the trial court committed plain error in failing to conduct a balancing test because the evidence was closely balanced. See *Naylor*, 229 Ill. 2d at 608, 893 N.E.2d at 668 (the trial court's consideration of the defendant's prior felony conviction outside of the 10-year time frame was plain error because the evidence was closely balanced). We disagree that the evidence presented at defendant's trial was closely balanced.

The evidence at trial demonstrated that Officer Park held defendant by the elbow in the course of taking her from her sentencing hearing to the booking area of the jail. Defendant escaped from his custody and proceeded down the stairs. Officer Park radioed for assistance. Both responding officers, Gregg and Friis, testified that they heard defendant hurrying down the stairs—evidence indicating that she intended to flee. Officer Park's testimony was corroborated by Officers Gregg and Friis. Defendant testified that when the officers stopped her in the stairwell, she put her hands behind her back—evidence tending to demonstrate that she assumed she would be placed in custody as a result of her actions. With this evidence, we do not find that the case against defendant was closely balanced so as to allow for our review under the plain-error doctrine. Defendant forfeited review of this issue, and we will not excuse her procedural default.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.