THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NELSON CALDERON, Defendant-Appellant.

First District (1st Division)   No. 1—07—2756

Opinion filed June 29, 2009.—Rehearing denied August 21, 2009.

Michael J. Pelletier, Jennifer L. Bontrager, and Patricia Unsinn, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Marie Q. Czech, and Anthony Kenney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court:

Following a jury trial, Nelson Calderon was convicted of aggravated kidnaping, residential burglary, and two counts of robbery. He received a mandatory sentence of natural life for aggravated kidnaping pursuant to the Habitual Criminal Act (720 ILCS 5/33B—1 *et seq.* (West 2006)), with concurrent sentences of 30 years for residential burglary

and 14 years extended terms for each robbery conviction. The defendant challenges his aggravated kidnaping conviction, claiming that as a matter of law, the evidence fails to prove beyond a reasonable doubt that he intended to secretly confine the kidnaping victim. He also contends he is entitled to a new trial based on two errors by the trial court: its decision to defer ruling on his motion *in limine* to bar his prior convictions until after he testified and instructing the jury on a lesser-included offense without confirming that defense counsel discussed this instruction with the defendant. Finally, he challenges his extended-term sentences and claims that the sentencing order contains numerous errors. We affirm his conviction but remand for resentencing.

## BACKGROUND

The defendant was charged by indictment with five counts: (1) the aggravated kidnaping of David Vasquez for the purpose of obtaining a ransom; (2) the aggravated kidnaping of David Vasquez based on the commission of a robbery against him; (3) the robbery of Moises Guzman; (4) the robbery of David Vasquez; and (5) the residential burglary of Moises Guzman's dwelling. The State nol-prossed the first count and the matter proceeded to a jury trial on the remaining four counts.

Prior to jury selection, the defendant filed a motion *in limine* seeking to bar the admission of his prior convictions for impeachment purposes in the event he chose to testify. The trial court reserved ruling on the motion until the defendant actually testified.

At trial, the State outlined a bizarre series of events that occurred on June 21, 2002, culminating with the defendant taking jewelry and money from Vasquez and money from Guzman. Vasquez and Guzman had identified the defendant as the offender in a lineup on November 1, 2002. Defense counsel's opening argument set forth misidentification as the defense theory.

David Vasquez testified that he drove a friend's car to a gas station at Archer Avenue and 47th Street to purchase cigarettes. When Vasquez returned to the car, the defendant, whom he had never seen before, was sitting in the passenger's seat. Vasquez told the defendant to get out. The defendant refused and told Vasquez to get in the car or else the defendant's friends in a nearby black Suburban sports utility vehicle (SUV) would beat him. Vasquez did as he was told and entered the driver's side of the car.

The defendant told Vasquez that the defendant and his friends believed Vasquez was in a gang of undocumented immigrants known as "Brazeros." The defendant explained that the Brazeros had stolen money from the defendant and his friends. Because the stolen money

had been marked in a special way, the defendant asked to see Vasquez's money. Vasquez told the defendant he did not belong to a gang, but handed over the $150 he was carrying. After ascertaining the money was not marked, the defendant returned it to Vasquez.

The defendant and Vasquez remained in the car in front of the gas station for what Vasquez described as "an hour and a half or two," until the defendant told Vasquez to drive to a specific three-flat building near 55th Street and Lawndale Avenue. Vasquez previously lived in an apartment in that building, and his friend, Moises Guzman, lived there at the time with another person. Because he was scared, Vasquez did as he was told. The black SUV followed.

After arriving at Guzman's building, Vasquez and the defendant knocked on the door to Guzman's apartment. Guzman answered and allowed Vasquez and the defendant to enter. The defendant related the story about the Brazeros and asked Guzman for his money. Guzman gave him the money he had on him, which the defendant kept. The defendant threatened Guzman that he and his friends would beat Guzman if Guzman failed to turn over more money. Guzman went to a safe in the apartment, but it contained no money. Guzman remembered he had more money in a shirt pocket and gave it to the defendant.

The defendant and Vasquez left the apartment. Outside, the defendant began walking away from Vasquez toward the SUV. The defendant stopped, returned to Vasquez, and ordered Vasquez to give him his money and the jewelry he was wearing. Vasquez complied, and the defendant entered the SUV, which drove off.

On cross-examination, Vasquez acknowledged that he parked the car he was driving near the gas station's entry, with its glass doors and numerous windows. Vasquez also acknowledged the car's windows were clear, the initial encounter occurred at approximately 4 p.m., during daylight hours, other people were in and around the gas station, and there was a lot of traffic at the intersection of Archer Avenue and 47th Street, where the gas station was located. Vasquez explained he did not try to reenter the gas station or flag down a passerby for help because he was afraid of the defendant's friends in the nearby SUV. Vasquez also acknowledged that he never saw the defendant with a gun or knife, but believed the defendant had a weapon because the defendant kept one hand in his pocket during the entire time they were in the car.

Moises Guzman provided testimony consistent with the testimony from Vasquez regarding the defendant's actions while in Guzman's apartment.

The parties stipulated that "the immigration status for Mr. David Vasquez and Mr. Moises Guzman is illegal" and that "at no time were there any threats or promises made to them by the police [or] by the [S]tate's [A]ttorney's office in exchange for the testimony here today or their statements to the police."

Defense counsel challenged the State's case in several ways. First, counsel challenged Vasquez's description during cross-examination to contest that a kidnaping occurred. Second, defense counsel highlighted the confusing nature of the case by eliciting from the investigating officer that his initial report regarding the events in Guzman's apartment indicated that Vasquez was a co-offender, rather than a victim. The officer explained that after interviewing Vasquez, he was able to determine that Vasquez was in fact a victim. Third, defense counsel challenged the reliability of the identification of the defendant by Vasquez and Guzman at the lineup. Counsel intimated that the defendant was identified by the victims because he was the only participant who wore a hairstyle similar to that attributed to the offender—a shaved head with a "tail."

The defendant did not testify.

After the close of evidence, defense counsel tendered instructions on unlawful restraint, in accordance with Illinois Pattern Jury Instructions, Criminal, Nos. 8.06 and 8.07 (4th ed. 2000), as a lesser-included offense of aggravated kidnaping. In counsel's view, the evidence failed to show Vasquez had been "secretly confined," which he contended was an element of the charged offense of aggravated kidnaping, but conceded the evidence "[did] support the lesser-included offense [of] unlawful restraint." The court instructed the jury on the lesser offense.

During deliberations, the jury sent out a note requesting definitions of the terms "detain," "confine," and "secretly." The court responded that the jurors had all the instructions in the case and asked that they continue to deliberate. The jury returned a guilty verdict on all four charges pursued at trial: aggravated kidnaping based on the robbery of Vasquez, robbery of Moises Guzman, robbery of Vasquez, and residential burglary. The court entered judgment on the verdict. Based on his background, the defendant was sentenced to a mandatory term of natural life for aggravated kidnaping under the Habitual Criminal Act (720 ILCS 5/33B—1 *et seq.* (West 2006)), with a concurrent 30-year sentence for residential burglary and a concurrent 14-year extended-term sentence for each robbery conviction. This timely appeal followed.

## ANALYSIS

The defendant raises five issues on appeal: (1) the State failed to prove beyond a reasonable doubt that he committed aggravated

kidnaping because there was no evidence that the defendant "secretly confined" the victim[1]; (2) he is entitled to a new trial based on the supreme court's decision in *People v. Patrick*, 233 Ill. 2d 62 (2009), because the trial court refused to rule on his pretrial motion *in limine* to bar impeachment evidence until he testified; (3) he is entitled to a new trial because the trial court failed to address, in the defendant's presence, defense counsel's request that the jury be instructed on the lesser-included offense of unlawful restraint; (4) the trial court erred when it imposed extended-term sentences on his robbery convictions, requiring a new sentencing hearing; and (5) a new sentencing hearing is required because the mittimus contains numerous errors.

## Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence to prove his or her guilt, the issue on appeal is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304 (2004), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); see also *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985).

■ To convince the jury the defendant committed aggravated kidnaping as charged in this case, the State had to prove four elements beyond a reasonable doubt. As to kidnaping, the State had to prove (1) the defendant knowingly by force or threat of imminent force, (2) carried David Vasquez from one place to another, and (3) the defendant acted with the intent to secretly confine Vasquez against his will. See 720 ILCS 5/10—1(a)(2) (West 2002). As to the aggravated portion of the charge, the State had to prove the defendant (4) "committed another felony upon David Vasquez, to wit: robbery." See 720 ILCS 5/10—2(a)(3) (West 2002).

■ The defendant contends on appeal that the State failed to prove the third element. The defendant argues that if he was guilty of any offense during the encounter with Vasquez, it was unlawful restraint. See 720 ILCS 5/10—3(a) (West 2002) ("A person commits the offense of unlawful restraint when he knowingly without legal authority detains another").

---

[1]This issue tracks kidnaping under subsection 10—1(a)(1) of the Criminal Code of 1961 ("secretly confines"), even though the charge before the jury was aggravated kidnaping under subsection 10—1(a)(2) ("intent secretly to confine") (720 ILCS 5/10—1(a)(1), (a)(2) (West 2002)).

The defendant asserts that the "gist" of kidnaping is a "secret confinement," citing to *People v. Reeves*, 385 Ill. App. 3d 716, 726, 897 N.E.2d 298 (2008). He analogizes his case to *People v. Lamkey*, 240 Ill. App. 3d 435, 608 N.E.2d 406 (1992), where the defendant grabbed the victim, a 10-year-old girl, pulled her into a vestibule, and attempted to sexually assault her. In *Lamkey*, we held no secret confinement was established because the vestibule had a glass door and was located "only a couple of steps away from one of the busiest thoroughfares in Chicago." *Lamkey*, 240 Ill. App. 3d at 439. As further support, we noted in kidnaping cases generally, "the victim has clearly been 'confined' or enclosed within something, such as a house or a car." *Lamkey*, 240 Ill. App. 3d at 438-39.

The defendant argues that, as in *Lamkey*, there was no secret confinement in this case. The defendant points to the clear glass windows of Vasquez's car in which he and Vasquez were parked, on a public street, near a busy intersection, during daylight hours. He also contends Vasquez voluntarily entered the car and that the defendant did nothing to prevent Vasquez from exiting it, such as restraining Vasquez or displaying a weapon. Thus, in the defendant's view, he did not attempt to keep Vasquez's whereabouts a secret; absent the secret confinement of Vasquez, proof of kidnaping falls short.

The third element of kidnaping, generally referred to as "secret confinement" may be accomplished by either of two means: (1) secretly confining a person against his will (720 ILCS 5/10—1(a)(1) (West 2002)) or taking a person from one place to another "with intent secretly to confine [that person] against his will" (720 ILCS 5/10—1(a)(2), (a)(3) (West 2002)). Contrary to the suggestions in the defendant's brief, the defendant was charged under subsection (a)(2), which, based on the issue before us, requires that we examine the evidence to determine whether it proved the defendant acted with intent to secretly confine David Vasquez. 720 ILCS 5/10—1(a)(2) (West 2002).

"Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment." *People v. Johnson*, 28 Ill. 2d 441, 443, 192 N.E.2d 864 (1963). Whether proof of circumstances gives rise to the requisite intent to prove kidnaping is ordinarily a question of fact for the jury. See *People v. Thorns*, 62 Ill. App. 3d 1028, 1030, 379 N.E.2d 641 (1978) ("evidence of the overall circumstances surrounding the act in question will support a conviction if [the circumstances] give rise to an inference of [the requisite] intent"). Thus, the issue before the jury was not whether the defendant secretly confined Vasquez, but whether, during the course of the encounter, the circumstances were sufficient to prove beyond a

reasonable doubt that the defendant acted with the intent to secretly confine Vasquez. On our review of the jury's verdict, we examine the record evidence to determine whether the evidence supported the inference the jury drew, based on its verdict, that the defendant acted with the intent to secretly confine Vasquez during the encounter.

It is well established that an intent to secretly confine may be established even where the defendant confines the victim in a moving vehicle in plain view of the public. See, *e.g.*, *People v. Bishop*, 1 Ill. 2d 60, 64, 114 N.E.2d 566 (1953) (a secret confinement was shown where the defendant forced the victim into a car at gunpoint and ordered the victim to drive to various places and to turn over his belongings); *People v. Hamil*, 20 Ill. App. 3d 901, 314 N.E.2d 251 (1974) (a secret confinement was shown where the defendant pulled the victim into his car, drove through several alleys, and prevented the victim from opening the car door). The defendant acknowledges as much when he points our attention to *People v. Goodwin*, 381 Ill. App. 3d 927, 888 N.E.2d 140 (2008), and *People v. Kittle*, 140 Ill. App. 3d 951, 489 N.E.2d 481 (1986), where the respective courts found the evidence sufficient to establish the requisite "secret confinement" based on encounters occurring within a motor vehicle that traveled on the public streets. The defendant, however, argues that those cases are distinguishable from the facts presented here.

In *Goodwin*, the defendant, in an attempt to flee from police officers, entered a van in which an 11-month-old child was secured in a car seat, and drove away. The court held the evidence was sufficient to prove "secret confinement" of the child because the defendant was traveling in a car at a high rate of speed in an attempt to avoid capture. From the defendant's aim to avoid capture, it followed that he sought to hide his whereabouts from the police by driving at a high speed in the van while transporting the 11-month-old child. The *Goodwin* court noted that "the police and the [child's parents] lost visual contact with the van for *** a short time." *Goodwin*, 381 Ill. App. 3d at 935. The *Goodwin* court held that even a "short time" was sufficient for the jury to infer that the defendant sought to secretly confine the child by hiding his own whereabouts. *Goodwin*, 381 Ill. App. 3d at 935 ("there is no minimum time of confinement set forth in the kidnaping statute"). The *Goodwin* court contrasted the circumstances present in the case before it with circumstances of an accused holding a child in "a fixed location where her presence was widely known." *Goodwin*, 381 Ill. App. 3d at 935, distinguishing *People v. Pasch*, 152 Ill. 2d 133, 187-88, 604 N.E.2d 294 (1992) (a secret confinement did not occur in a hostage situation where the defendant never attempted to keep the victim's location secret and a relative was aware of the victim's loca-

tion at all times). The circumstances in *Goodwin* were sufficient to allow the jury to decide whether the third element of kidnaping was proved beyond a reasonable doubt. *Goodwin*, 381 Ill. App. 3d at 934.

In *Kittle*, as in this case, the defendant entered the victim's empty car. When the victim returned to the car, she asked whether he needed a ride and agreed to take him to a location near where he indicated he wanted to go. When the defendant asked to be driven to yet another location, the victim reluctantly agreed. At some point, the victim attempted to leave the car, whereupon the defendant grabbed her around the neck and waist. The victim began to scream and honked the horn, which prompted the defendant to threaten to kill her if she did not quiet down. The victim pacified the defendant by saying she would drive them to a place where they could be alone. Eventually, the victim escaped from the car and the defendant fled on foot.

The *Kittle* court held the defendant's acts of physically preventing the victim from exiting her car coupled with his willingness to allow the victim to drive them to a place where they could be alone were circumstances sufficient to support a "finding that defendant intended to secretly confine the complainant against her will." *Kittle*, 140 Ill. App. 3d at 955. The *Kittle* court noted that "courts have held that one can be secretly confined in an automobile within the meaning of the statute whether the automobile is moving or parked. [Citations.]" *Kittle*, 140 Ill. App. 3d at 955.

Unlike in *Goodwin* and *Kittle*, so the defendant argues, in this case there was no secret confinement because the car remained parked in the public's view, and the defendant did not physically prevent Vasquez from leaving the car. Thus, in his view, *Lamkey* controls. We disagree.

While *Goodwin* may be distinguishable on the basis that the third element (apparently) concerned a charge under subsection 10—1(a)(1) that the defendant *secretly confined* the child trapped in the car seat, *Goodwin* also instructs that circumstances involving the transportation of the victim in a vehicle may take the case outside the holdings of *Lamkey* and *Pasch*, cases involving insufficient evidence of secret confinement. *Kittle* is much like the case before us because the third element of kidnaping concerned the defendant's *intent to secretly confine* the victim, a charge (apparently) under section 10—1(a)(2). Contrary to the defendant's claim in making comparisons to *Lamkey*, the defendant's acts do not consist solely of confining Vasquez in the car while it was parked at the gas station. The defendant also ordered Vasquez to drive to a home where Vasquez formerly lived with the other robbery victim, Guzman. As in *Kittle*, Vasquez could not be sure what to expect en route or at the intended destination. Nor was it

clear that Guzman's home was the final destination the defendant would take Vasquez. While it is true that Vasquez was not physically restrained in the car as the victim was in *Kittle*, and Vasquez did not attempt to flee from the car as the victim in *Kittle* was able to do, Vasquez testified he did as he was told out of fear that the defendant had a weapon in his pocket and the friends the defendant referred to in the SUV would beat him.

Consistent with the holdings in *Kittle* and *Goodwin*, the facts adduced at trial in this case established sufficient circumstances from which the jury could determine that the defendant's acts proved beyond a reasonable doubt that he intended to secretly confine Vasquez in transporting Vasquez from the gas station to Guzman's home. See *Thorns*, 62 Ill. App. 3d at 1030 ("evidence of the overall circumstances surrounding the act in question will support a conviction if [the circumstances] give rise to an inference of [the requisite] intent"). As our supreme court explained, an individual may be secretly confined in the course of being transported in a car:

> "A person forcibly confined in an automobile constantly moving from place to place may be more secretly and effectively confined from the kidnapper's standpoint than one kept in a building or other place of incarceration. Common experience has shown that a victim and his kidnapper so situated can be most difficult to locate." *Bishop*, 1 Ill. 2d at 64.

The instant case is also unlike our recent decision of *People v. Gonzalez*, 392 Ill. App. 3d 323 (2009), where we followed *Lamkey* in holding that no secret confinement was proved where a parent, while in the hospital, handed a newborn child to the defendant to allow him to complete paperwork and the defendant walked away with the child only to be apprehended within 15 minutes on the public way as she walked with the child in her arms. 392 Ill. App. 3d at 327. When the circumstances of this case are considered in their entirety, they are more like the circumstances presented in *Bishop*, *Kittle*, and *Goodwin*, where the defendants confined their victims in automobiles traveling the public streets, than *Lamkey*, *Pasch*, or *Gonzalez*, where we found the evidence of secret confinement to be insufficient to sustain the conviction of each defendant.

In reaching this conclusion, we make clear our rejection of defendant's efforts to limit our consideration, in assessing the evidence before the jury, to only that evidence which pertains to what occurred between the defendant and Vasquez while they were parked at the gas station. In his brief, the defendant omits any reference to the drive to Guzman's home in asserting that the evidence was legally insufficient to have allowed the jury to consider the offense of aggravated kidnap-

ing. In his reply brief, the defendant goes so far as to contend that we need not consider whether Vasquez "was secretly confined at Guzman's house" because the State did not pursue that theory at trial. On the contrary, we must consider all of the evidence adduced at trial. See *Collins*, 106 Ill. 2d at 261 (to preserve the fact finder's role as weigher of the evidence, " 'upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution' " (emphasis in original)), quoting *Jackson v. Virginia*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789. The defendant has not provided us with any authority that directs us, in assessing the sufficiency of the evidence as to an element of the offense, to consider only that evidence that comports with what the defendant claims to be the State's theory. The jury was not so instructed; nor is our review of the evidence so limited.

The narrow issue raised in this case is whether, viewing the evidence in the light most favorable to the State, circumstances were proved from which the jury could find beyond a reasonable doubt that the defendant had the intent to secretly confine Vasquez at any point during the encounter, including in the car on the way to Guzman's house. Succinctly stated, under the circumstances presented at trial, it was for the jury to resolve whether the defendant acted with the requisite intent during his encounter with Vasquez. The jury having so found, we find no basis to disturb its verdict.

### Motion *In Limine*

■ The defendant next contends he was denied his right to a fair trial because the trial court refused to rule on his motion *in limine* to bar prior convictions unless and until he testified. Our supreme court recently held that such a practice amounts to an abuse of discretion. *People v. Patrick*, 233 Ill. 2d 62, 73 (2009). *Patrick* also makes clear, however, that to preserve such a claim for appeal, the defendant must testify at trial. *Patrick*, 233 Ill. 2d at 73. In this case, the defendant chose not to testify. Thus, his claim was not preserved.

### Lesser-Included-Offense Admonishments

■ The defendant next contends he was denied a fair trial because the trial court failed to comply with the supreme court's directive in *People v. Medina*, 221 Ill. 2d 394, 409, 851 N.E.2d 1220 (2006), and inquire of counsel, in the defendant's presence, whether the defendant consented to the tender of the lesser-included-offense instruction on unlawful restraint.

In *Medina*, 221 Ill. 2d at 409, the court held that upon defense counsel's tender of a lesser-included-offense instruction, the trial court should inquire of counsel whether he or she discussed the pos-

sible consequences of the tender with the defendant. Such a discussion is necessary because when a lesser-included-offense instruction is offered, a defendant "is exposing himself to potential criminal liability, which he otherwise might avoid, and is in essence stipulating that the evidence is such that a jury could rationally convict him of the lesser-included offense." *Medina*, 221 Ill. 2d at 409.

Here, the defendant was not convicted of the lesser-included offense of unlawful restraint. We fail to perceive any error under *Medina* where he was not convicted of the lesser-included offense. The danger *Medina* seeks to avoid—a defendant being convicted of an uncharged offense to which he unknowingly concedes his criminal liability by way of a jury instruction he has not tacitly or expressly approved—while it may have been present here, did not harm the defendant. No reviewable error is manifested in the record before us.

## Extended-Term Sentence

■ The defendant next contends the trial court erred when it imposed extended-term sentences on his two robbery convictions. The State concedes this was error. We agree that this was error.

The defendant was convicted of aggravated kidnaping (a Class X offense), residential burglary (a Class 1 offense), and two counts of robbery (a Class 2 offense). Where, as here, a defendant receives a sentence of natural life, section 5—8—2 of the Unified Code of Corrections (730 ILCS 5/5—8—2 (West 2006)) permits the court to impose an extended-term sentence on "the next most serious offense." *People v. Terry*, 183 Ill. 2d 298, 302, 700 N.E.2d 992 (1998). Here, "the next most serious offense" was residential burglary, not robbery. Thus, extended-term sentences could not be imposed on the robbery convictions.[2]

Because the trial court is in the better position to impose statutorily permissible sentences after considering the requisite factors, we remand for resentencing. See, *e.g.*, *People v. Causey*, 341 Ill. App. 3d 759, 774, 793 N.E.2d 169 (2003) (remanding for resentencing where void sentence imposed).

## Errors in the Mittimus

■ The defendant's final contention is that the mittimus contains numerous errors. The State agrees the mittimus should be corrected. Because we are remanding for resentencing, we simply note our agree-

---

[2]We also question the need for a sentence imposed on the defendant's robbery conviction with Vasquez as the victim, which would appear to merge with the aggravated kidnaping conviction. Because we are ordering a new sentencing hearing, the circuit court is free to address this on remand.

ment that the mittimus conflicts with the sentence announced in the report of proceedings in several ways. See *People v. Peeples*, 155 Ill. 2d 422, 496, 616 N.E.2d 294 (1993) (where the sentence reflected in the common law record conflicts with the sentencing order indicated in the report of proceedings, the report of proceedings controls).

## CONCLUSION

The defendant's convictions are affirmed. The evidence adduced at trial was sufficient to allow the jury to draw an inference of the defendant's intent to secretly confine the kidnaping victim from the circumstances surrounding the defendant's acts. The error under *Patrick* was not preserved. Any error under *Medina* caused the defendant no harm. Because sentencing errors did occur, this matter is remanded to the trial court for resentencing.

Affirmed and remanded.

R. GORDON, P.J., and WOLFSON, J., concur.